NOT DESIGNATED FOR PUBLICATION

No. 111,662

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

GREGORY E. BELL,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; JAMES R. FLEETWOOD, judge. Opinion filed November 6, 2015. Affirmed in part, reversed in part, and remanded with directions.

*Ryan Eddinger*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before BRUNS, P.J., STANDRIDGE, J., and BURGESS, S.J.


*Per Curiam*:  Gregory E. Bell appeals from the trial court's judgment denying his K.S.A. 60-1507 motion without holding an evidentiary hearing. On appeal, Bell contends that the district court should have held an evidentiary hearing on his claim that his trial counsel was ineffective. We find that several of Bell's arguments lack merit. Moreover, it appears that some of the decisions made by Bell's trial counsel were done—or not done—as a result of trial strategy. However, we simply cannot determine from the record on appeal whether trial counsel made a tactical decision to not call Bell's sisters as witnesses.

1

Thus, we affirm in part, reverse in part, and remand this matter for an evidentiary hearing.

FACTS

The facts from Bell's underlying criminal case were previously set forth in *State v. Bell*, No. 101,903, 2011 WL 3444200, at *1 (Kan. App. 2011) (unpublished opinion), *rev. denied* 293 Kan. 1108 (2012):

"In the early morning hour of February 22, 2008, Lightning Joe's, a nightclub in Wichita, had just closed and its patrons were congregating in the parking lot. [Antonio] Judice and [Maurice] Peters were in the parking lot when Bell's sisters, who were angry at Judice, confronted him. This was the second altercation within a relatively short period of time between Bell's sisters and Judice. What happened next was controverted, but the unfortunate result was that Judice was shot and killed and Peters was wounded.

"At trial, more than 30 witnesses testified to their versions of the events surrounding the shootings. Many of the events were recorded on video surveillance cameras both inside and outside the club but the video recordings and numerous still images taken from them were not included in the record on appeal. Moreover, none of the trial exhibits were added to the record.

"One consistent fact at trial was that at about the time of Judice's altercation with Bell's sisters in the parking lot, a white or silver sedan drove up near Judice. Testimony indicated that Bell was a passenger and his brother, Arthur Bryant, was the driver of the sedan. Bell and Bryant may or may not have exited the sedan, but William Banks testified, with some equivocation, that Bell shot Judice. On the other hand, another witness, Steven Espinoza, testified that Bryant shot Judice. Judice died a few hours after the shooting.

"At trial, Peters testified with some equivocation that Bell had shot him from the passenger side of the sedan. Other witnesses testified the passenger in the sedan (sometimes identified as Bell) was shooting as the sedan drove away from the scene.

2

"At the conclusion of the trial, the jury found Bell guilty of the voluntary manslaughter of Judice, attempted voluntary manslaughter, and (alternatively) aggravated battery of Peters, and criminal possession of a firearm."

On direct appeal, Bell raised several issues: (1) whether the district court erred by excluding alleged admissions on recorded telephone calls between Bryant and other people as well as in statements made by Bryant to his jailhouse cellmate; (2) whether the district court erred by engaging in ex parte communication with the jury by reading back testimony outside of Bell's presence; (3) whether the district court improperly warned Bell that if he chose to testify that he would be subject to cross-examination on any subject thereby frightening Bell into not testifying; (4) whether the involuntary manslaughter instruction—which applied if the jury did not agree on Bell being guilty of voluntary manslaughter—operated to preclude the jury from considering the lesser included offense of involuntary manslaughter; (5) whether the verdict form for the aggravated battery charge was deficient because it did not explicitly identify one crime as the principal offense and the other as the lesser included offense; and (6) whether cumulative error denied him a fair trial. The Court of Appeals rejected each claim of error, except for the claim regarding an ex parte communication with the jury, which the court found to be harmless. 2011 WL 3444200, at *11-13.

On April 17, 2012, Bell filed a K.S.A. 60-1507 motion and an accompanying memorandum of law alleging ineffective assistance of trial and appellate counsel as well as prosecutorial misconduct. After Bell terminated his first two attorneys, the district court appointed a third attorney to represent Bell.

On January 14, 2014, the district court conducted a nonevidentiary hearing during which Bell's 60-1507 counsel was primarily focused on arguing that the State had not provided Bell and his trial counsel with all the video evidence from the nightclub on the evening of the shooting. Bell's 60-1507 counsel also briefly argued that trial counsel did

3

not review the necessary video footage with Bell before trial. During the State's response, it introduced the State's Trial Exhibit 30-A, which contained the full security video from the night of the shooting and Trial Exhibit 30-B, which contained the edited version played during trial. Notably, the State pointed out that the video evidence introduced at trial and provided to Bell throughout the case had never included video evidence of the shooting but is from several cameras positioned at the entrance and on the outside of the nightclub showing various people coming and going from the club. Ultimately, district court adopted the State's arguments on all issues except in regards to the video evidence.

On February 12, 2014, the district court conducted a brief hearing in which the State and Bell's 60-1507 counsel confirmed that the State had previously provided Bell with the entire video evidence from the evening of the shooting. The district court then restated that it was adopting the State's arguments for its ruling. On February 21, 2014, the district court entered a detailed order denying Bell's K.S.A. 60-1507 motion. Bell thereafter filed a timely notice of appeal.

ANALYSIS

*Issues Presented*

On appeal, Bell raises four claims of ineffective assistance of trial counsel: (1) whether trial counsel failed to investigate and review the video tape fully with him; (2) whether trial counsel failed to interview and subpoena several witnesses who could have testified in his defense; (3) whether trial counsel failed to move to suppress Maurice Peters' eyewitness identification; and (4) whether trial counsel failed to fully investigate and utilize ballistics evidence introduced at trial. The remaining claims that he raised below but failed to brief—such as prosecutorial misconduct and ineffective assistance of appellate counsel—are deemed to be waived and abandoned. See *State v. Boleyn*, 297 Kan. 610, 633, 303 P.3d 680 (2013).

4

*Standard of Review*

When a movant files a K.S.A. 60-1507 motion, a district court has three options:

"(1) The court may determine that the motion, files, and case records conclusively show the prisoner is entitled to no relief and deny the motion summarily; (2) the court may determine from the motion, files, and records that a potentially substantial issue exists, in which case a preliminary hearing may be held. If the court then determines there is no substantial issue, the court may deny the motion; or (3) the court may determine from the motion, files, records, or preliminary hearing that a substantial issue is presented requiring a full hearing." *Fischer v. State*, 296 Kan. 808, 822-23, 295 P.3d 560 (2013).

Our standard of review depends upon which of these options the district court chose. When the district court reviews the motion, files, and records; holds a preliminary hearing, and summarily denies a K.S.A. 60-1507 motion—as occurred here—we are in as good of a position as the district court to consider the merits. We, therefore, exercise unlimited review. *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014).

In accordance with K.S.A. 60-1507(b), the movant must establish by a preponderance of the evidence that either: (1) "the judgment was rendered without jurisdiction"; (2) "the sentence imposed was not authorized by law or is otherwise open to collateral attack"; or (3) "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." K.S.A. 60-1507(b); Supreme Court Rule 183(g) (2014 Kan. Ct. R. Annot. 287).

A movant bears the burden to prove that his or her K.S.A. 60-1507 motion warrants an evidentiary hearing. To do so, the movant's contentions must be more than conclusory; the movant must state an evidentiary basis in support of the claims or the basis must be evident from the record. *Grossman v. State*, 300 Kan. 1058, 1062, 337 P.3d 687 (2014). Once the movant satisfies this burden, a court must "'grant a hearing, unless

5

the motion is "second" or "successive" and seeks similar relief.'" 300 Kan. at 1062 (quoting *Holmes v. State*, 292 Kan. 271, 274, 252 P.3d 573 [2011]).

Bell's collateral attack centers on several allegations of ineffective assistance of trial counsel. Both our federal and state Constitutions guarantee the right of a criminal defendant to the effective assistance of counsel. *State v. Brown*, 300 Kan. 565, 574-75, 331 P.3d 797 (2014). To establish ineffective assistance of counsel, the defendant must show (1) that counsel's performance was constitutionally deficient, which requires a showing that counsel made errors so serious that counsel's performance was less than that guaranteed by the Sixth Amendment to the United States Constitution; and (2) that counsel's deficient performance prejudiced the defense, which requires a showing that counsel's errors were so severe as to deprive the defendant of a fair trial. *State v. Coones*, 301 Kan. 64, 70, 339 P.3d 375 (2014).

Under the first prong, Bell must show that counsel's representation fell below an objective standard of reasonableness. See *State v. Betancourt*, 301 Kan. 282, 306, 342 P.3d 916 (2015). In doing so,

> "'[j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. [Citation omitted.] A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." [Citation omitted.] There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular

6

client in the same way. [Citation omitted.]'" *Coones*, 301 Kan. at 70 (quoting *Strickland v. Washington*, 466 U.S. 668, 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674 [1984]).

See *State v. Kelly*, 298 Kan. 965, 969-70, 318 P.3d 987 (2014).

Under the second prong, the defendant must demonstrate "'a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. A court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury.'" *State v. Edgar*, 294 Kan. 828, 838, 283 P.3d 152 (2012) (quoting *Bledsoe v. State*, 283 Kan. 81, 90-91, 150 P.3d 868 [2007]). In the context of a K.S.A. 60-1507 motion, courts review ineffective assistance of counsel claims de novo. *Robertson v. State*, 288 Kan. 217, 227, 201 P.3d 691 (2009).

*Trial Counsel's Efforts to Review Video Evidence with Bell*

Bell first argues that his trial counsel failed to fully investigate or review with him the video evidence from the nightclub. Although Bell acknowledges that the State did, in fact, provide Bell's 60-1507 counsel with true and accurate copies of the video admitted during trial, he claims that "without testimony from trial counsel, there were no facts established to reach legal conclusions concerning Mr. Bell's claims." Otherwise, Bell does not cite any authority to support his claim that his trial counsel was ineffective for failing to review the video evidence with him. See *State v. Tague*, 296 Kan. 993, 1001, 298 P.3d 273 (2013) (failing to support a point with pertinent authority or show why it is sound despite a lack of supporting authority or in the face of contrary authority is akin to failing to brief the issue).

Included in a trial counsel's responsibility to make strategic and tactical decisions is the duty to reasonably investigate or to reasonably conclude that a particular investigation is unnecessary. *Shumway v. State*, 48 Kan. App. 2d 490, 505, 293 P.3d 772 (2013), *rev. denied* 298 Kan. 1203 (2013) (citing *State v. Hedges*, 269 Kan. 895, 914, 8 P.3d 1259 [2000]).

In the present case, the evidence reveals that Bell had an opportunity to review the video evidence before trial. On September 23, 2008, the district court entered an order for special visitation permitting a person from the trial counsel's office to visit Bell "for the purpose of reviewing a video in the defendant's case." As such, we hold that Bell has not met his burden to show that there is an evidentiary basis supporting his claim that trial counsel's representation fell below an objective standard of reasonableness. See *Flynn v. State*, 281 Kan. 1154, 1163-64, 136 P.3d 909 (2006).

*Failure to Call Particular Witnesses*

Bell next contends that trial counsel should have called Brian Lee as a witness at trial. In addition, he contends that his sisters, LaQuita Bell, Rayshawn Bell, and Gnett Johnson, as well as his brother, Arthur Bryant, should have been called as witnesses at trial. According to Bell, all these witnesses would have testified that he was not the shooter.

Generally, it is "'within the province of a lawyer to decide what witnesses to call, whether and how to conduct cross-examination, and other strategic and tactical decisions.'" *Sola-Morales*, 300 Kan. at 887 (quoting *Thompson v. State*, 293 Kan. 704, 716, 270 P.3d 1089 [2011]). But when counsel lacks the information to make an appropriate decision because of a lack of investigation, a "trial strategy" argument is inappropriate. *Thompson*, 293 Kan. at 716. Bell bears the burden of showing that trial counsel's actions were not the product of strategy. See *Sola-Morales*, 300 Kan. at 888.

8

At the outset, we note that the record reveals that trial counsel subpoenaed Bryant as a witness. However, Bryant was ultimately unavailable to testify because he invoked his Fifth Amendment right to remain silent. Therefore, trial counsel cannot be faulted for Bryant's absence as a witness.

In regards to Lee, it appears that trial counsel made a sound strategic decision not to call him as a witness. The record reveals that on May 6, 2008, the district court entered an order authorizing Bell to hire a private investigator. Lee claims in his affidavit that he spoke with a private investigator over the phone to whom he described the shooter as "about six foot tall, dark skinned, heavy set with braids in his hair." Lee asserts that he arrived at the nightclub about half an hour before closing time and that he did not go inside, knowing it was about to close. Lee claims that he was outside of the nightclub's doors trying to pick up women leaving the club when he saw and spoke briefly with Bell before the shooting. However, video surveillance indicates that Lee and his friends entered the nightclub shortly before Bell exited.

In addition, Lee claims that he was standing outside of the club within 6 feet of Bell when the shots were fired. But again video surveillance shows that Lee did not leave the nightclub until after the shooting had taken place. It is understandable why trial counsel would not have chosen to use Lee's testimony when the State easily would have been able to impeach it. "Strategic choices based on a thorough investigation of the law and facts are virtually unchallengeable." *Flynn*, 281 Kan. at 1157.

Unfortunately, we cannot glean much from the record on appeal regarding trial counsel's decision not to call one or all of Bell's sisters as witnesses. Although the State accurately points out that the purported affidavits from LaQuita, Rayshawn, and Gnett, provided by Bell in support of his 60-1507 motion do not qualify as affidavits, Bell was not required to provide an affidavit at this stage of the proceedings. See *Swenson v. State*, 284 Kan. 648, 656, 162 P.3d 808 (2007). He needed to only "'set forth a factual

9

background, names of witnesses or other sources of evidence to demonstrate that [movant] is entitled to relief.'" *Baker v. State*, No. 111,709, 2015 WL 3632331, at *8 (Kan. App. 2015) (unpublished opinion) (quoting *Sullivan v. State*, 222 Kan. 222, 223-24, 564 P.2d 455 [1977]), (*petition for rev. filed* June 30, 2015).

In their statements, each of the sisters essentially state that they witnessed the shooting; that Bell was not the shooter; that they were willing to testify on Bell's behalf; and that they spoke with trial counsel but he never asked them to testify. Certainly, there may have been a legitimate reason why trial counsel decided not to call Bell's sisters as witnesses. However, we are simply unable to determine this based on the record as it now exists. Thus, we are obligated to remand this matter to the district court for an evidentiary hearing in order to decide whether the failure to call these witnesses was part of a reasonable trial strategy or constituted ineffective assistance of counsel. See *State v. Weber*, 297 Kan. 805, 816, 304 P.3d 1262 (2013).

*Failure to Suppress Testimony of Maurice Peters*

Bell also contends that his trial counsel was ineffective for failing to move to suppress the testimony of Maurice Peters—one of the victims who identified Bell as the shooter. Here, jury instruction 22 provided the instruction on eyewitness identification testimony. Notably, the instruction told the jury to consider the "degree of certainty demonstrated by the witness at the time of any identification of the accused." See *State v. Mitchell*, 294 Kan. 469, 479-81, 275 P.3d 905 (2012) (holding that it is error to instruct the jury on the degree of certainty factor and discouraging its future use). However, Bell did not raise the issue on direct appeal or in his K.S.A. 60-1507 motion. See *Boleyn*, 297 Kan. at 633 (an issue not briefed by the appellant is deemed waived and abandoned).

Moreover, Bell's sole authority is *Mitchell*, which he only cites in passing for the proposition that "[c]onsidering [Peters' statement that he was 90 percent sure of his

identification] and the prejudice it is now recognized to cause, it would seem a more effective defense to have [Peters'] testimony withheld from the jury." The failure to support a point with pertinent authority or show why it is sound despite a lack of supporting authority or in the face of contrary authority is akin to failing to brief the issue. *Tague*, 296 Kan. at 1001. Bell has, therefore, abandoned the point.

Regardless, trial counsel would have been unable to establish that Peters' eyewitness identification was inadmissible. Kansas courts use a two-step process when determining whether an eyewitness identification is admissible. They first examine whether the police procedure used to obtain the identification was unnecessarily suggestive, and if so, courts then consider whether there was a substantial likelihood of misidentification under the totality of the circumstances surrounding the identification. *Mitchell*, 294 Kan. at 476; see *State v. Cruz*, 297 Kan. 1048, 1061, 307 P.3d 199 (2013) (concluding that "unnecessarily" is the proper qualifier for "suggestive").

Under the first step, identification procedures are unnecessarily suggestive if officers conducting the proceeding give the witness information that highlights one of the individuals before the witness makes a selection or the officers made suggestions about who the witness should select. *State v. Corbett*, 281 Kan. 294, 305, 130 P.3d 1179 (2006). "In particular, a photo lineup is unnecessarily suggestive if the individuals depicted do not fit within the witness' description or if there is a gross disparity between the defendant's photograph and the others." *State v. Lewis*, 299 Kan. 828, 842, 326 P.3d 387 (2014).

Furthermore, courts are confident that juries have the knowledge and experience to determine the reliability of eyewitness identifications. *State v. Lopez*, 299 Kan. 324, 329-30, 323 P.3d 1260 (2014). If the district court instructs the jury on the proper eyewitness reliability factors and defense counsel engages in "'vigorous cross-examination and persuasive argument . . . dealing realistically with the shortcomings and trouble spots of

11

the identification process,' the defendant's rights are protected." *Corbett*, 281 Kan. at 306 (quoting *State v. Warren*, 230 Kan. 385, 395, 635 P.2d 1236 [1981]).

Here, Detective Loren Johnson, of the Wichita Police Department, interviewed Peters the morning after the shooting while he was recovering in the hospital. Around 3 p.m. that day, Detective Johnson returned to the hospital and presented Peters with a series of 14 photographs of individuals police had learned that day may have been involved in the shooting. Included in the series was a November 15, 2005, photograph of Bell and a January 9, 2007, photograph of Bryant. Peters initially identified Bell as the driver of the car and Bryant as the shooter. At some point, Peters also watched the video surveillance from the nightclub with another detective. Peters later identified Bell as the shooter and Bryant as the driver. Peters stated that he was only 90 percent certain that Bell was the shooter. During trial, Peters explained why he was only 90 percent certain:

"Because, um, when I go back over it in my mind and stuff, and look at all these photos, I mean, that's the closest description I can fit. It wasn't that many people there. So it ain't like it's a lot of people I got to pick through. I mean, it was this three, put their lineups up, and I showed them, I told them exactly what I knew. I mean, I never met him in my life, it's not like, you know, I knew him and I just wanted him to go to jail, or be in trouble, or anything like that, it wasn't nothing like that. But 90 percent of me tell me that's him."

Shortly thereafter, trial counsel cross-examined Peters at length about his recollection of the events, including his identification of Bell. At one point, the following exchange took place between trial counsel and Peters:

"Q. So when people weren't telling you who it was, you identified Arthur as the passenger?

"A. Uh-huh. I didn't even know his name.

12

"Q. What do you mean, you said Arthur was the shooter, and he's Greg (indicating); right?

"A. Well, I told them that, um, I believe I told them that he was the driver because he had short hair. And that, um, Arthur was the one who shot me.

"Q. That Arthur was the passenger, and he was the one that shot [you]?

"A. Off identification; yes.

"Q. So the first identification you gave was that Arthur shot you?

"A. Yeah.

"Q. And then later, Espinoza told you the guy's name who shot you is Arthur Bryant?

"A. Yeah.

"Q. Did he tell you that it was a white car?

"A. Uh-huh; I knew that.

"Q. You did?

"A. Yeah, I knew that.

"Q. How come, when you met with the detectives, you told them it was a silver Chevy Malibu?

. . . .

"Q. And was that also then when you told them that the shooter was heavyset and had on a blood shirt?

13

"A. Um, I don't know, I think that was the first, the first detective that came in.

"Q. Okay. Which detective did you tell that the shooter had on a red shirt?

"A. I don't even know. I don't even remember that.

There is nothing in the record on appeal indicating that police either suggested that Peters select an individual or that police highlighted Bell or Bryant before Peters made his selections. Moreover, Bell does not assert that the photographs failed to depict individuals who generally fit within Peters' description or that there was a gross disparity between Bell's photograph and the remaining photographs. Indeed, trial counsel stated that he had no objection to the admittance of the photographs into evidence. Likewise, there is nothing in the record to suggest that the video presented to Peters suffered from similar defects. As such, trial counsel did not have any foundation on which to argue that the lineup was unnecessarily suggestive. See *State v. Levy*, No. 94,012, 2006 WL 3772838, at *2, 4 (Kan. App. 2006) (unpublished opinion) (finding that a photographic lineup of 6 to 10 photographs was not unnecessarily suggestive where the witness pointed to 1 of the photographs and said that "it looked similar, but he wasn't for sure"), *rev. denied* 283 Kan. 932 (2007).

Instead, Peters' fuzzy recollection of the shooter was properly addressed through trial counsel's "vigorous cross-examination" of Peters. See *Corbett*, 281 Kan. at 306. As such, trial counsel was not ineffective for failing to seek its suppression.

Moreover, the parties' arguments illustrate why courts are to avoid second-guessing trial counsel's strategy. The State argues that it may have been a good strategy by trial counsel to not challenge the admission of the testimony because it provided him an opportunity to exploit the weakness of Peters' identification. On the other hand, Bell argues that "it would seem a more effective defense to have [Peters'] testimony withheld from the jury." "Even though experienced attorneys might disagree on the best tactics or

14

strategy, deliberate decisions based on strategy may not establish ineffective assistance of counsel." *Flynn*, 281 Kan. 1154, Syl. ¶ 5. Such is the case here.

*Utilization of Ballistics Evidence*

Further, Bell contends that trial counsel was ineffective because he failed to obtain expert ballistics testimony. Bell claimed in his K.S.A. 60-1507 motion that such testimony would have impeached the credibility of William Banks' eyewitness testimony and would have established that Judice "was not shot at close range because there was no gunpowder residue on the clothing or body of the victim."

During trial, Gary Miller, a firearm toolmark examiner, testified regarding 17 cartridge casing that police recovered from the scene. Miller was able to trace the cartridge casings to two handguns found at the scene and an unidentified weapon that was never recovered. Miller never testified about the presence of gunpowder residue on Judice. On cross-examination, trial counsel specifically asked Miller about the extent of his testimony:

> "Q. Now, based on what you know about the crime scene and the evidence that you've
> been shown, you cannot tell anybody who fired the first shot?"
>
> "A. No, I cannot.
>
> "Q. And you cannot tell where the shots were fired from?
>
> "A. No, I cannot."

Williams Banks—a witness to the shooting—also testified about his recollection of the events. Although Banks had significant difficulty in remembering the order of the events, he eventually identified Bryant as the driver and Bell as the shooter. At one point

in the testimony, Banks said that he spoke with officers on the night of the shooting but that he did not want to talk to them because he "didn't want to get involved in it." On cross-examination, trial counsel established that Banks had consumed "six or seven drinks" and was "a little drunk" when he witnessed the shooting. Trial counsel also established that Banks did not identify Bell as the shooter at the preliminary hearing and only decided to speak with law enforcement officers after he was involved in another, unrelated shooting.

We believe that the district court properly denied Bell's claim for at least three reasons. First, trial counsel specifically elicited during cross-examination that Miller could not identify the shooter or the position of the parties when the shots were fired. Second, Banks never testified to the precise location of parties at the time of the shooting, and trial counsel did an excellent job of impeaching Banks' testimony. Third, Bell is unable to demonstrate prejudice because he has failed to explain how an expert witness may have provided meaningful testimony. See *Kidd v. State*, No. 111,234, 2015 WL 4460380, at *5-6 (Kan. App. 2015) (unpublished opinion) (defendant unable to show how expert could provide meaningful testimony to counter coroner's testimony who admitted that she could not discern the distance between the shooter and the victim); *Alderson v. State*, No. 89,220, 2003 WL 22532936, at *3 (Kan. App. 2003) (unpublished opinion) (defendant failed to demonstrate how a forensics expert could have presented any meaningful testimony showing that the bullets the defendant fired could have caused the victim's death). We, therefore, find that the trial counsel's representation did not fall below an objective standard of reasonableness and that Bell is unable to show prejudice regarding the utilization of a ballistics expert.

Affirmed in part, reversed in part, and remanded with directions.

16