No. 99,163

STATE OF KANSAS, *Appellee*, v. MICHAEL MITCHELL, *Appellant*.
(275 P.3d 905)

Opinion filed May 11, 2012.

*Ryan J. Eddinger*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Julie A. Koon*, assistant district attorney, argued the cause, and *Nola Tedesco Foulston*, district attorney, and *Steve Six*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

BILES, J.: Michael Mitchell was convicted of aggravated robbery based entirely on the victim's eyewitness identification. The victim picked Mitchell out of a photo lineup a few days after the robbery and indicated 100 percent certainty that Mitchell was the assailant. At trial, the victim testified he had known Mitchell for several months before the attack but did not know his name.

On appeal, Mitchell argues the district court should have deleted the degree of certainty factor from those listed in PIK Crim. 3d 52.20, which is the cautionary eyewitness identification instruction. Mitchell contends this factor improperly focuses the jury on ex-

pressions of certainty when evaluating the accuracy of eyewitness identifications. Mitchell refers us to scientific research concluding that witness certainty is an untrustworthy predictor of accuracy, but he concedes there is conflicting research on the subject.

We hold that the witness certainty factor in PIK Crim. 3d 52.20 should no longer be used because it prompts the jury to conclude that eyewitness identification evidence is more reliable when the witness expresses greater certainty. But we affirm Mitchell's conviction because the instruction could not have misled the jury since the eyewitness knew his attacker and was subjected to a thorough cross-examination.

## FACTUAL AND PROCEDURAL BACKGROUND

In November 2006, a man kicked in the door to Mark Trevino's apartment, entered, and asked, "Where's the money?" Trevino testified he tried to run outside but was punched in his left eye and head, causing him to fall to the ground. The assailant then removed about $70 from Trevino's pocket and ran away.

When police arrived, Trevino described his attacker as a 6-foot tall, approximately 270 pound, African-American male with short hair and a goatee. Trevino said he knew his attacker because they had met several months before and the man had stayed at Trevino's apartment. But Trevino said he did not know the man's name.

In the course of investigation, officers received information causing them to suspect Trevino and Mitchell had a prior confrontation at the same apartment complex. And since the physical description Trevino gave of his attacker matched the description the police had of Mitchell from the prior confrontation, the investigating officer created a photo lineup with pictures of six men, placing Mitchell in the third position. At trial, the officer testified about his efforts to select individuals with similar physical characteristics when creating the lineup.

Six days after the robbery, Trevino was shown the photo lineup. He quickly pointed to Mitchell's picture and stated, "[T]hat's him." The detective instructed Trevino to write a comment on the lineup, and Trevino wrote "#3 is 100% the person who robbed me." He also circled Mitchell's photograph and wrote his initials next to it.

Mitchell was charged with aggravated robbery based on Trevino's identification. Mitchell denied the charge.

Before trial, Mitchell filed a motion to suppress Trevino's eyewitness identification and statement that he was 100 percent certain Mitchell was his assailant. Mitchell argued the identification was unreliable because Trevino had an incentive to focus the investigation on Mitchell, did not have much opportunity to observe his attacker, and obviously did not know Mitchell well because Trevino could not recall Mitchell's name, despite Trevino's claims Mitchell previously spent the night in Trevino's apartment. The district court denied the motion, and the photo lineup was admitted at trial without further objection.

Mitchell also objected to issuing the eyewitness identification instruction from our state's pattern jury instructions. PIK Crim. 3d 52.20 directs jurors to determine whether any of seven listed factors exist and, if so, to then decide "the extent to which they would affect accuracy of identification by an eyewitness." Mitchell specifically sought deletion of the sixth factor in PIK Crim. 3d 52.20, which states: "The degree of certainty demonstrated by the witness at the time of any identification of the accused."

Mitchell argued there is no meaningful correlation between witness certainty and the identification's accuracy, so drawing the jury's attention to it was misleading. He also contended that this court rejected the witness certainty factor in *State v. Hunt*, 275 Kan. 811, 69 P.3d 571 (2003), which is one in a series of cases considering what criteria the district court should consider when determining whether an eyewitness identification is admissible. The trial court overruled Mitchell's objection and issued PIK Crim. 3d 52.20 without modification.

At trial, Trevino testified that he met Mitchell at a bar and had seen him at least four other times. Trevino admitted that he bought cocaine from Mitchell on at least two of those occasions, and Mitchell stayed the night with Trevino once after they both drank and used drugs. Trevino also testified that Mitchell had tried to pass off a baking soda mixture as more cocaine, but that after Trevino used the mixture, he refused to pay for it. Trevino said Mitch-

ell believed he owed him for the mixture, and this became a subject of disagreement between them.

The photo lineup was admitted into evidence without a timely trial objection. Trevino also identified Mitchell in court as his attacker and testified that he had no doubt Mitchell was the person who robbed him. Mitchell was convicted of aggravated robbery and appealed to the Court of Appeals. He argued the district court should have suppressed the photo lineup and erred by issuing the cautionary eyewitness identification instruction from PIK Crim. 3d 52.20 without modification.

The Court of Appeals looked past Mitchell's failure to preserve his objection at trial about admission of the photo lineup. It held the issue's consideration was required to serve the ends of justice and prevent denial of a fundamental right. On the merits, the panel held the eyewitness identification evidence was admissible because the photo lineup procedure was not "unduly" suggestive. *State v. Mitchell*, No. 99,163, 2009 WL 311814, at *3-4 (Kan. App. 2009) (unpublished opinion) ("[A]ll of the photos fit the general description Trevino had provided and were reasonably similar in appearance. The detective advised Trevino both orally and in writing, that he shouldn't guess and shouldn't assume that the person who had robbed him was included in the photos.").

We pause to note that the panel supported its holding on the photo lineup issue by citing *State v. Corbett*, 281 Kan. 294, 304-05, 130 P.3d 1179 (2006), which uses the term "impermissibly suggestive" in describing the standard for reviewing police eyewitness identification procedures. But see *State v. Reed*, 45 Kan. App. 2d 372, 379, 247 P.3d 1074, *rev. denied* 292 Kan. 968 (2011) (noting Kansas appellate courts frequently use the terms "unnecessarily suggestive" and "impermissibly suggestive" interchangeably and suggesting the term "unnecessarily suggestive" more accurately describes the *Corbett* standard). The Court of Appeals in Mitchell's case used yet another term: unduly suggestive. This, at the least, hints strongly that uniformity in the terminology may be needed. But the photo lineup issue is not before this court, so that opportunity must wait.

As to the PIK eyewitness identification instruction, the Court of Appeals commented that this court's caselaw had not clearly addressed whether, and under what circumstances, the jury should be instructed to consider an eyewitness' expressed degree of certainty. But it declined to consider whether the certainty factor was improperly included in PIK Crim. 3d 52.20 because the court held there was no real possibility any error misled the jury because Trevino knew Mitchell before the aggravated robbery occurred. *Mitchell*, 2009 WL 311814, at *2.

Mitchell filed a petition for review with this court. We granted review only on the jury instruction issue. Jurisdiction arises under K.S.A. 20-3018(b) (review of Court of Appeals' decision).

## ANALYSIS

Our caselaw recognizes that eyewitness identifications can be unreliable and result in wrongful convictions, causing some of the most tragic miscarriages of justice. This is a subject of numerous legal articles and scientific research, several of which conclude that the "whole process . . . calls for caution." See *State v. Warren*, 230 Kan. 385, 390-92, 635 P.2d 1236 (1981); see also *Manson v. Brathwaite*, 432 U.S. 98, 112, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977) (noting prospects for unreliability when an eyewitness testifies about an encounter with a total stranger under emergency circumstances or emotional stress, coupled with the ease of distortion by circumstances or later police actions); and *United States v. Wade*, 388 U.S. 218, 228, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967) (recognizing "the proverbially untrustworthy nature" of eyewitness evidence).

This acknowledged need for caution has led our court to recognize the necessity for procedural safeguards against wrongful convictions based on unreliable eyewitness identifications. These include: (1) The trial court's authority to suppress eyewitness testimony if the identification procedure rendered the identification unreliable; (2) defense counsel's cross-examination of the witness and arguments about the identification's reliability; and (3) use of a cautionary instruction whenever eyewitness identification is a critical part of the prosecution's case and there are serious ques-

tions about the identification's reliability. *Warren*, 230 Kan. at 395, 397. See also *Perry v. New Hampshire*, 565 U.S. ___, 132 S. Ct. 716, 729, 181 L. Ed. 2d 694 (2012) ("The constitutional requirement that the government prove the defendant's guilt beyond a reasonable doubt also impedes convictions based on dubious identification evidence.").

In Mitchell's case, these safeguards were in place. Mitchell's trial counsel sought suppression of Trevino's identification of Mitchell claiming it was unreliable, so the issue was directly before the district court. Mitchell's counsel also engaged in extensive cross-examination of Trevino at trial in order to cast doubt on the identification. And with that advance groundwork, the cautionary eyewitness identification instruction from PIK Crim. 3d 52.20 was issued without modification. That PIK instruction reads:

"The law places the burden upon the State to identify the defendant. The law does not require the defendant to prove (he) (she) has been wrongly identified. In weighing the reliability of eyewitness identification testimony, you first should determine whether any of the following factors existed and, if so, the extent to which they would affect accuracy of identification by an eyewitness. Factors you may consider are:
(1) The opportunity the witness had to observe. This includes any physical condition which could affect the ability of the witness to observe, the length of the time of observation, and any limitations on observation like an obstruction or poor lighting;
(2) The emotional state of the witness at the time including that which might be caused by the use of a weapon or a threat of violence;
(3) Whether the witness had observed the defendant on earlier occasions;
(4) Whether a significant amount of time elapsed between the crime charged and any later identification;
(5) Whether the witness ever failed to identify the defendant or made any inconsistent identification;
(6) *The degree of certainty demonstrated by the witness at the time of any identification of the accused*; and
(7) Whether there are any other circumstances that may have affected the accuracy of the eyewitness identification." (Emphasis added.) PIK Crim. 3d 52.20.

Mitchell argues the district court committed reversible error when it denied his request to delete the sixth factor pertaining to

witness certainty. The State argues the district court correctly issued the PIK instruction.

*Standard of Review*

Because Mitchell objected to the instruction at trial, this court examines whether it properly and fairly stated the law as applied to the facts and could not have reasonably misled the jury. In making this determination, appellate courts consider the instructions as a whole. *State v. Appleby*, 289 Kan. 1017, 1059, 221 P.3d 525 (2009). And we note the use of PIK instructions is not required, but it is strongly recommended unless the facts in a particular case require modification. In those instances, the trial court should not hesitate to make alterations. *State v. Tully*, 293 Kan. 176, 197, 262 P.3d 314 (2011).

*Witness Certainty When Considering Suppression of the Identification*

First, Mitchell relies on our decision in *Hunt* to argue that trial courts should no longer consider witness certainty when determining whether to suppress eyewitness identification evidence. Therefore, he reasons, the jury should not have been instructed to consider witness certainty. The State responds that Mitchell misconstrues this court's identification suppression caselaw and contends witness certainty is still a valid factor in the jury's analysis when considering the accuracy of an eyewitness identification. To decide the issue, we must revisit the standards applicable to suppression of eyewitness testimony, even though our concern in this case is limited to the jury instruction.

District courts follow a two-step process when determining whether an eyewitness identification is admissible evidence. The first step examines whether the police procedure used to obtain the identification was impermissibly or unnecessarily suggestive. If so, trial courts move to the second step and consider whether there was a substantial likelihood of misidentification under the totality of the circumstances surrounding it. *Corbett*, 281 Kan. at 304.

Initially, Kansas trial courts looked to five criteria to determine whether there was a substantial likelihood for misidentification: (1)

the witness' opportunity to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. See, *e.g.*, *State v. Ponds*, 227 Kan. 627, 630, 608 P.2d 946 (1980); *State v. Deffenbaugh*, 217 Kan. 469, 471, 536 P.2d 1030 (1975). These are commonly called the *Biggers* factors because they derived from the United States Supreme Court's decision in *Neil v. Biggers*, 409 U.S. 188, 199-200, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972).

In *Hunt*, this court "refined" the *Biggers* factors by approving criteria recognized by the Utah Supreme Court in *State v. Ramirez*, 817 P.2d 774, 781 (Utah 1991). *Hunt*, 275 Kan. at 817-18. The *Hunt* court held that the *Ramirez* factors improved the district court's analysis of whether the identification was reliable, but it emphasized that acceptance of the *Ramirez* model should not be considered a rejection of the *Biggers* factors. *Hunt*, 275 Kan. at 818.

But confusion occurred in later cases because *Hunt* omitted the degree of certainty factor approved earlier in *Biggers*, which to some implied disapproval. And this interpretation was bolstered by the fact that the Utah Supreme Court had also omitted the witness certainty factor after holding certainty was a poor predictor of accuracy. *Ramirez*, 817 P.2d at 781 ("[W]e criticized this factor and essentially rejected it as an indicator of an identification's reliability."). But another explanation for our failure to address the factor could have been that no certainty evidence was admitted at Hunt's trial, so there was no need for that factor to appear in the analysis. Regardless, this court's next decision did not clarify whether trial courts should continue considering witness certainty when determining whether an eyewitness identification would be admissible.

In *State v. Trammell*, 278 Kan. 265, 92 P.3d 1101 (2004), three witnesses identified the defendant from various photographic lineups, and the same eyewitness identification instruction at issue in Mitchell's case was submitted to the jury. Trammell argued for the first time on appeal that PIK Crim. 3d 52.20 was erroneous because it included the degree of certainty factor, citing *Hunt*. This court

declined to review the jury instruction issue, but we noted *Hunt* did not support Trammell's claim that the eyewitness instruction was erroneous because *Hunt* did not address the validity of PIK Crim. 3d 52.20. *Trammell*, 278 Kan. at 269-70.This dictum hinted that the factors for determining admissibility may be different than the factors that should be included in the cautionary jury instruction.

The *Trammell* court did reach whether the trial court should have excluded the eyewitness identification. It described *Hunt* as "adding the *Ramirez* factors to the *Biggers* factors," which implied the certainty factor remained valid. *Trammell*, 278 Kan. at 270. But that issue was not expressly clarified until our *Corbett* decision.

In *Corbett*, this court listed eight factors for trial courts to consider in the second step of the identification suppression analysis: (1) The witness' opportunity to view the criminal at the time of the crime; (2) The witness' degree of attention; (3) The accuracy of the witness' prior description; (4) *The level of certainty demonstrated by the witness at the confrontation*; (5) The length of time between the crime and the confrontation; (6) The witness' capacity to observe the event, including his or her mental and physical acuity; (7) The spontaneity and consistency of the witness' identification and the susceptibility to suggestion; and (8) The nature of the event being observed and the likelihood that the witness would perceive, remember, and relate it correctly. 281 Kan. at 305. These eight factors from *Corbett* have been cited in later cases involving district court identification suppression rulings. See, *e.g.*, *State v. Reed*, 45 Kan. App. 2d 372, 378-79, 247 P.3d 1074, *rev. denied* 292 Kan. 968 (2011); *State v. Galyardt*, 44 Kan. App. 2d 729, 735-38, 240 P.3d 619 (2010), *pet. for rev.* filed October 21, 2010 (pending).

Relying on *Corbett*, we find there is no merit to Mitchell's argument that Kansas courts no longer consider the witness certainty factor when determining if eyewitness identifications are admissible evidence. Therefore, his argument that the jury instruction should have been modified to conform to the same standard applied by district courts when deciding a suppression motion is wrong.

But this finding does not answer the next question presented—whether the jury should have been instructed to consider witness certainty. And to decide this, we must focus on whether the language of the instruction misled the jury.

*The Cautionary Jury Instruction's Continued Viability*

In *Hunt*, this court commented that "juries usually attach great weight to eyewitness identifications, while others involved in the trial know and other disciplines have documented that such identification is often unreliable." 275 Kan. at 818. See also Handberg, *Expert Testimony of Eyewitness Identification: A New Pair of Glasses for the Jury*, 32 Am. Crim. L. Rev. 1013, 1035 (1995) (finding that what is known about eyewitness identification is not " 'within the jury's common knowledge.' "). This court has held that a proper cautionary instruction, which sets forth factors for the jury to consider, helps to alleviate concerns about eyewitness identifications. *Warren*, 230 Kan. at 395; see also *Perry*, 132 S. Ct. at 728-29 (holding juries traditionally determine whether evidence is reliable and approving eyewitness-specific jury instructions).

We continue to believe the best approach is to leave the reliability determination to the jury and allow the parties to challenge the eyewitness identification testimony at trial as the circumstances warrant. But this conclusion does not distract from the importance of a properly worded cautionary instruction that adequately informs the jury of the perils of eyewitness identifications and suggests criteria for its deliberative process when a trial court has found an eyewitness identification is a critical part of the prosecution's case and there is serious question about that identification's reliability. Under these circumstances, a form of PIK Crim. 3d 52.20 should continue to be given. See *State v. Mann*, 274 Kan. 670, 677-79, 56 P.3d 212 (2002); *State v. Harris*, 266 Kan. 270, 277-78, 970 P.2d 519 (1998); *State v. Willis*, 240 Kan. 580, 583-86, 731 P.2d 287 (1987); *Warren*, 230 Kan. at 390-92.

But affirming the general need for instruction when the circumstances warrant does not answer the specific question presented in this appeal—whether it is appropriate to instruct the jury to consider the degree of certainty demonstrated by the witness at the

time the witness identifies the defendant. Mitchell argues PIK Crim. 3d 52.20 does not provide adequate safeguards because the degree of certainty factor has been criticized as scientifically unsound as a correlate to the identification's accuracy. We agree in part, but we focus more on the actual language in the instruction, rather than the scientific research.

The Utah Supreme Court was the first court to criticize eyewitness certainty evidence in *State v. Long*, 721 P.2d 483 (Utah 1986). The *Long* court held:

"Research has also undermined the common notion that the confidence with which an individual makes an identification is a valid indicator of the accuracy of the recollection. K. Deffenbacher, *Eyewitness Accuracy and Confidence: Can We Infer Anything About Their Relationship?* 4 Law and Human Behavior 243 (1980); Lindsay, Wells, Rumpel, *Can People Detect Eyewitness-Identification Accuracy Within and Across Situations?*, 66 J. Applied Psych. 79, 80-82 (1981); [Citation omitted.] In fact, the accuracy of an identification is, at times, inversely related to the confidence with which it is made. Buckhout, [*Eyewitness Testimony,* 15 Jurimetrics J. 171,] at 184 [(1975) (reprinted from 231 Scientific American 23 (Dec. 1974)]." 721 P.2d at 490.

Almost 20 years after *Long*, the Connecticut Supreme Court conducted its own review of scientific studies and reached a different conclusion. *State v. Ledbetter*, 275 Conn. 534, 569, 881 A.2d 290 (2005). The *Ledbetter* court noted the studies it reviewed had reached differing conclusions about the degree of certainty and summarized the results as follows:

"[S]ome studies showed no correlation, or even a negative correlation between witness confidence and the accuracy of the identification, while others showed a positive correlation. See G. Wells, M. Small & S. Penrod et al., [*Eyewitness Identification Procedures: Recommendations for Lineups and Photospreads*], 22 Law & Hum. Behav. [603, 622 (1998)]; M. Leippe, [*Effects of Integrative Memorial and Cognitive Processes on the Correspondence of Eyewitness Accuracy and Confidence*], 4 Law & Hum. Behav. 261 [(1980)]. Moreover, the studies suggest that the correlation may be stronger for witnesses who identify a subject during the identification procedure than for those who determine that the perpetrator is not present. See G. Wells, M. Small & S. Penrod et al., [22 Law & Hum. Behav. at] 623; S. Sporer, [*Eyewitness Identification Accuracy, Confidence, and Decision Times in Simultaneous and Sequential Lineups*], 78 J. Applied Psychol. 22, 23 [(1993)]. Research also suggests 'that the certainty—accuracy relation is higher under good viewing conditions than under poor viewing conditions.' A. Bradfield, G. Wells & E. Olson, [*The Damaging Effect of Confirming Feedback on the Re-*

*lation Between Eyewitness Certainty and Identification Accuracy*], 87 J. Applied Psychol. 112, 114 [(2002)]. These results have led some researchers to 'propose that the relation between eyewitness identification certainty and accuracy is not a single value but instead is a family of possible values.' [87 J. Applied Psychol. at] 112." 275 Conn. at 568-69.

Notably, most studies cited by *Ledbetter* that found a positive relationship between accuracy and certainty were published after the Utah court's *Long* decision. But given the plethora of studies done on this issue and the nuances to each, it is difficult to derive many overarching principles from them, and the parties have not argued the merits of any particular study one way or the other.

In the end, we agree with the Connecticut Supreme Court that the available studies are not definitive on the question whether there is a significant correlation between certainty and accuracy. But we are also mindful that the literature suggests certainty may not always be as reliable an indicator of accuracy.

Given the complicated nature of this inquiry and the heightened concern surrounding this factor, we hold that the current language in PIK Crim. 3d 52.20 encourages jurors to give more weight to identifications by a certain witness than an uncertain one and does nothing to inform the jury that certainty evidence may be unreliable. The instruction directs jurors to consider whether a witness has expressed a degree of certainty about the identification and, if so, the extent to which that factor would affect accuracy of the identification. As worded, this factor prompts the jury to conclude that an eyewitness identification is more reliable when the witness expresses greater certainty, which places undue weight on eyewitness certainty evidence. Therefore, we hold it is error to instruct the jury on the degree of certainty factor, and we discourage its future use.

This holding requires us to determine whether the use of the degree of certainty factor could have reasonably misled the jury in Mitchell's case. Such inquiries must decide whether an expression of certainty by the eyewitness was communicated to the jury and, if so, the nature and extent of the certainty expressed. If the court determines there was no degree of certainty conveyed by the wit-

ness when making the identification, the jury could not have been misled by including this factor in the instruction.

In this case, there is no question that certainty evidence was submitted to the jury. Trevino indicated at the time of the photo lineup that he was 100 percent certain Mitchell was the robber, and this evidence was admitted at trial. Therefore, he not only made an expression of certainty, but he characterized it with 100 percent certainty. Compare *State v. Anderson*, 294 Kan. 450, 459, 276 P.3d 200 (2012), in which we noted the absence of any expressions of certainty in the eyewitness identifications by two witnesses.

In Mitchell's case, it was possible that the jury could have considered Trevino's expression of 100 percent certainty when determining whether his identification was reliable and accurate. PIK Crim. 3d 52.20 instructed the jury it could consider Trevino's expression of certainty, and we presume the jury follows the instructions given. *State v. Reid*, 286 Kan. 494, 521, 186 P.3d 713 (2008). Therefore, it is appropriate that we consider next whether Trevino's identification was a critical aspect of the prosecution's case and then whether there was any serious question about the identification's reliability.

The first consideration is easy. Trevino's identification was critical to Mitchell's conviction because it was the only evidence connecting Mitchell to the crime. But the normal concerns about eyewitness reliability, as discussed in the caselaw and scientific literature, are not present because Trevino knew Mitchell. He had been acquainted with Mitchell for several months before the crime and Mitchell had stayed at his apartment. And this court has previously held that the cautionary eyewitness identification instruction is not required when the witness was personally familiar with the defendant because there is not a substantial likelihood of misidentification. See *State v. Calvin*, 279 Kan. 193, 205-07, 105 P.3d 710 (2005); *Mann*, 274 Kan. at 678-79; *State v. Saenz*, 271 Kan. 339, 354, 22 P.3d 151 (2001).

In addition, we note that other procedural safeguards mitigated any deficiency in the cautionary instruction. For example, during opening argument, Mitchell's defense counsel challenged the cred-

ibility of Trevino's claim that he knew his attacker even though he did not know his name. Counsel questioned whether anyone could know someone for months and invite them over to their apartment but not recall a first name, last name, or even a nickname. Defense counsel also pointed out the inconsistencies between the description Trevino gave to police with Mitchell's actual height, weight, and skin color, arguing someone who "knew" Mitchell should be able to more accurately describe him. Also during cross-examination, Mitchell's attorney elicited testimony that Trevino had been drinking the night they supposedly met and they "barely talked." He also impeached Trevino with his testimony from a preliminary hearing that he lost his vision during the attack when he was punched in the eye, and counsel emphasized Trevino's cocaine use. Finally, during closing argument, defense counsel continued to challenge the veracity of Trevino's claim that he knew Mitchell by pointing out that Trevino's description did not fit Mitchell's characteristics, Trevino's perception was distorted by drinking and possible drug use, and that there was no other evidence, such as fingerprints, to support Trevino's identification.

The jury was thoroughly exposed to the facts and circumstances both in favor of and against the accuracy of Trevino's identification of Mitchell and Trevino's expression of certainty about that identification. Therefore, we affirm the Court of Appeals' holding because the jury could not reasonably have been misled by the instruction under the facts of this case. *Mitchell*, 2009 WL 311814, at *3.

WILLIAM B. ELLIOTT, District Judge, assigned.