NOT DESIGNATED FOR PUBLICATION

No. 116,991

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CODY W. BRUCE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Douglas District Court; ROBERT W. FAIRCHILD, judge. Opinion filed March 16, 2018. Affirmed.

*Ryan J. Eddinger*, of Kansas Appellate Defender Office, for appellant.

*Kate Duncan Butler*, assistant district attorney, *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, P.J., SCHROEDER, J., and BURGESS, S.J.

PER CURIAM:  After a bar fight in Baldwin City, Kansas, law enforcement conducted an investigation to determine who was involved. Cody W. Bruce was charged with aggravated battery and the case went to a jury trial. As the trial progressed, Bruce's counsel moved for a mistrial, contending that three identification issues were prejudicial. First, the victim identified Bruce in-court after failing to identify him on two previous occasions. Second, a law enforcement officer identified Bruce in-court as "my suspect Cody Bruce" but did not have any previous knowledge of the defendant. Third, a witness testified as to his identification of Bruce from a six-person photographic lineup, but also

1

testified that law enforcement initially showed him a single photo of Bruce. The trial court denied Bruce's motion for a mistrial, and at the conclusion of the trial the jury found Bruce guilty of aggravated battery. On appeal, Bruce claims that the three witnesses' identifications caused a fundamental failure in the proceeding resulting in prejudice that warranted a mistrial. The trial court did not abuse its discretion in determining that the witnesses' in-court and out-of-court identifications did not result in a fundamental failure in the proceeding. The trial court's denial of Bruce's motion for mistrial is affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

*Altercation at The Salt Mine and subsequent investigation*

In May 2015, Nicholas Marra and Dylan Perry went to a Baldwin City, Kansas, bar called The Salt Mine. Shortly after 1 a.m., the two men were waiting at the bar for drinks when Marra noticed Perry was engaged in a conversation with another bar patron. When their conversation began to escalate verbally, Marra reached out and put his arms between them. Marra turned back toward the bar to grab his drinks, and when he turned back around, he was punched twice in the face. Marra grabbed the individual and they both fell to the ground fighting. By the time the fight ended, Marra had injuries to his teeth, gums, and hand.

Bar employees called Baldwin City police and Officer Michael Velasquez responded. Marra told Officer Velasquez that the person who struck him was a man with a large build and facial hair "wearing a black shirt and jeans and a ball cap."

Officer Velasquez spoke with a handful of people, both in the bar and in the parking lot, and left with names of potential witnesses and people he suspected of being involved in the fight. One of the individuals the officer spoke to in the parking lot was Andy Kelly. When Officer Velasquez asked Kelly if he knew the individual involved in

2

the altercation, Kelly said that although he did not know the person's name, he likely could identify the individual again if he saw him.

After gathering the names of and speaking with witnesses that night, Officer Velasquez took to Facebook to further his investigation. As the officer browsed through one witness' Facebook page, he found an individual that matched Marra's description—Bruce. To investigate Bruce's potential involvement, Officer Velasquez made a number of phone calls. First, the officer called Bruce himself and asked if he was present at the bar the night of the incident. Bruce responded that he was not at The Salt Mine that night. Officer Velasquez also called three other individuals. One said he saw Bruce at the bar but could not remember details because he was intoxicated at the time. Another individual advised the officer that she did not remember Bruce being at The Salt Mine the night in question. Another witness not only said that Bruce was present, but he was also involved in the fight.

Officer Velasquez obtained video surveillance footage of the incident from the bar. The officer observed an individual wearing a black button down shirt, jeans, and a backwards ball cap—fitting the description Marra provided law enforcement. In part of the video, this individual unbuttoned his shirt, revealing a tattoo on his torso. Officer Velasquez found a photograph on Facebook of Bruce with a similar looking tattoo. However, Marra failed to identify Bruce as the assailant both from a six-person photo lineup and at a preliminary hearing.

Eventually, Bruce was arrested and charged with level 4 aggravated battery in August 2015.

*Trial proceedings*

Before trial, Bruce filed a motion in limine to preclude Officer Velasquez from identifying him as the assailant on surveillance footage from The Salt Mine. He argued that because Officer Velasquez had no independent knowledge of him prior to his investigation, the officer should not give his opinion testimony as to the identity of the individual in the video before the jury. The district court took the motion under advisement but did not render a decision.

The Friday before trial, the State announced that Kelly would be called as a witness and that he was prepared to testify regarding his identification of Bruce from the surveillance footage as well as a six-person photo lineup. Defense counsel objected to the late addition of this witness, arguing that it would change the defense strategy and would be prejudicial towards Bruce. The district court ordered a continuance to allow the defense to investigate the circumstances surrounding Kelly's identification of Bruce from the photo lineup.

Marra was the State's first witness at trial. When the prosecutor asked Marra to tell the jury who hit him that night, he pointed at Bruce and said, "the defendant." Defense counsel objected, arguing that the order in limine prevented the testimony. The State argued that the issue was one for cross-examination and the trial court never ruled on the objection. As Marra's testimony continued, he explained that he remembered separating Bruce and Perry at the bar. Marra also testified regarding his inability to identify Bruce previously, stating that he felt nervous when he looked at the photo lineup and that Bruce looked different at the preliminary hearing without his beard.

Kelly also testified for the State. Kelly testified that while he did not know Bruce's name at the time, he remembered Bruce was one of the men speaking with Perry at the bar. However, Kelly did not actually witness the fight; his back was turned at the time.

Kelly also confirmed his prior photo identifications with Officer Velasquez. Kelly successfully identified Bruce from a photo lineup prepared by Officer Velasquez during the investigation, but then testified on cross-examination the officer had previously shown him a single photo of Bruce early on in the investigation. Kelly also identified Bruce in the courtroom.

After learning that Officer Velasquez showed Kelly a single photo of Bruce during the investigation, the defense moved for a mistrial. Defense counsel argued Officer Velasquez' procedure tainted the identification process and that Kelly's photo array identification would have been subject to suppression as unduly suggestive if it had been known prior to trial that the officer showed Kelly the single photo prior to showing him the photo lineup. At the time of the motion, the trial court took it under advisement, but indicated that the perceived suggestive conduct "would bear on the reliability of a later identification." Defense counsel later renewed its motion as well as its objection to Marra's in-court identification.

Officer Velasquez testified about his investigatory efforts. The officer identified Bruce in the video as "my suspect Cody Bruce." Defense counsel moved to strike that statement, and the trial court granted the motion. The trial court instructed the jury to disregard the officer's answer. When he continued testifying, Officer Velasquez also confirmed that he showed Kelly a single photograph of Bruce prior to asking Kelly to identify him from a six-person photo lineup. At this point, the trial court and the parties discussed the various identification issues, including the identifications by Marra, Kelly, and Officer Velasquez, eventually denying Bruce's motion for a mistrial.

It should also be noted that other various witnesses also testified at trial. Some testified that they remembered Bruce being at The Salt Mine that night and others testified that they did not recall seeing him there. Because the three witnesses' testimonies described above are the subject of this appeal, the remaining testimony is briefly

summarized here. One witness, a social acquaintance of Bruce, testified that he did not remember seeing Bruce at The Salt Mine that night, but that he was intoxicated and did not remember much. He also testified that he, Bruce, and another friend all have similar builds that might make it difficult to distinguish them. Another witness testified that she did not see Bruce that night, but testified she arrived at The Salt Mine with Bruce's brother. Although she identified other individuals she knew, including her boyfriend, talking with Marra's assailant on the surveillance footage, she did not identify the suspect. Her boyfriend also testified he did not see Bruce at The Salt Mine that night. Perry, Marra's friend who was involved in the initial verbal altercation, remembered having an argument with an individual while waiting in line at the bar that night, but otherwise had limited recollection of the event. Another witness testified that he helped break up the fight but did not recognize any of the participants. A manager at The Salt Mine testified that he saw Bruce at the bar on the night of the incident, but did not personally witness the altercation. He identified Bruce, as well as many of the other bar patrons and witnesses, on the video.

The defense presented two alibi witnesses who testified that Bruce worked at an auto shop until approximately 3 a.m. on the night in question.

*Additional facts relevant to Bruce's contentions on appeal*

The trial court did not rule on the motion for a mistrial at the time it was raised, stating that it needed to review caselaw and the pretrial hearing transcript, and the trial continued without a ruling.

As to Marra and Officer Velasquez' in-court identifications, the trial judge initially determined that prior to trial it ruled they were precluded from making an in-court identification of Bruce as the individual that hit him.

6

"I looked back at the motion in limine after [defense counsel] raised it. I did rule that he could not identify the defendant in Court, and that [Officer] Velasquez could not identify the defendant as the one that was there, because he didn't know him previously."

However, after reviewing the transcript as well as the trial testimony at issue, the trial court found that because it never issued a formal ruling on the motion in limine, there was no order in limine to violate. The trial judge further determined that although Marra identified Bruce at trial as his attacker, the jury could evaluate the strength of the identification.

"I think I did rule earlier on the victim, just saying that well, he can't do an in-court identification, but the fact is he did, so then I've got to figure out what to do about it.

"Basically, when I look at the Marra ID, it was, you know, the defendant was able to cross-examine him about the fact he never could identify him before, and so, you know, the jury is just going to have to decide what they believe about that.

"And I don't think that one instance is significant enough to cause a problem."

As to Officer Velasquez' in-court identification, the trial judge acknowledged that while the identification was potentially problematic, the court's admonishment mitigated the error:

"[Officer] Velasquez's statement clearly was—should not have been what it was, but the Court did admonish the jury to disregard his response. . . .

"And I think that the admonition should correct that error. Because cross-examination made it clear that he did not know the defendant prior to this incident."

As to Kelly's testimony, the trial court determined that although it might have been an error, Bruce did not suffer from undue prejudice. First, almost a year passed between the initial incident of Officer Velasquez showing Kelly the single photograph and Kelly's identification of Bruce from a six-person lineup. Next, the photo of Bruce in the lineup was different from the photo Officer Velasquez showed Kelly the first time. Lastly, Kelly

7

indicated the night of the altercation that he believed he could recognize Marra's assailant if he saw him again.

> "Andy Kelly, you know, I think that he should not have shown him the single photograph. He did, Kelly had said that the night of, 'I would know him if I saw him', and then a long time elapsed between that single photograph which was shown close to the incident somewhere, we are not exactly sure where.
> "And in view of the lineup, which did not include the same pictures, it was a different picture, and so I think given those things, it didn't create undue prejudice."

After both parties presented their cases, the jury convicted Bruce of level 7 aggravated battery—a lesser offense than the originally charged level 4 aggravated battery. The district court sentenced Bruce to 24 months' probation with an underlying 24 months' imprisonment. Bruce appeals his conviction and the trial court's ruling denying his motion for a mistrial.

## DID THE TRIAL COURT ABUSE ITS DISCRETION IN DENYING BRUCE'S MOTION FOR A MISTRIAL?

Bruce argues that a mistrial was warranted here because the identifications from Marra, Officer Velasquez, and Kelly were tainted or otherwise unreliable. The State argues that while there might have been prejudicial conduct, there was no fundamental failure in the proceeding causing prejudice that warranted a mistrial.

*Standard of review*

An appellate court reviews a trial court's decision on a motion for mistrial for abuse of discretion. Judicial discretion is abused if the judicial decision (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *State v. Moyer*, 306 Kan. 342, 352, 410 P.3d 71 (2017).

8

"Under K.S.A. 22-3423(1)(c), a trial court may declare a mistrial if there was prejudicial conduct either inside or outside the courtroom that makes it impossible for the trial to proceed without injustice to either the defendant or the prosecution. This statute creates a two-step process. First, the trial court must determine if there was some fundamental failure of the proceeding. If so, the trial court moves to the second step and assesses whether it is possible to continue without an injustice. In other words, the trial court must decide if the prejudicial conduct's damaging effect can be removed or mitigated by an admonition, jury instruction, or other action. If not, the trial court must determine whether the degree of prejudice results in an injustice and, if so, declare a mistrial." *State v. Waller*, 299 Kan. 707, Syl. ¶ 3, 328 P.3d 1111 (2014).

In evaluating a motion for mistrial under K.S.A. 22-3423(1)(c), the trial court must first decide if there is prejudicial conduct creating a fundamental failure in the proceeding. If so, the trial court must next decide if the conduct makes it impossible to continue the trial without injustice or if the damaging effect of the prejudicial conduct can be removed or mitigated by an admonition, jury instruction, or other action. *Moyer*, 306 Kan. at 356; *State v. Sherman*, 305 Kan. 88, 118-19, 378 P.3d 1060 (2016).

To determine if an error makes it impossible to continue the trial without injustice and requires a mistrial, a court must determine if the fundamental failure affected a party's substantial rights. If a right guaranteed by the United States Constitution is not implicated, this evaluation is assessed under the harmless error statutes, K.S.A. 2017 Supp. 60-261 and K.S.A. 60-2105. However, if a constitutional right is implicated, the error must be assessed under the constitutional harmless error standard in *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705, *reh. denied* 386 U.S. 987 (1967). See *State v. Logsdon*, 304 Kan. 3, 39, 371 P.3d 836 (2016).

Bruce asserts that the conduct impacted his right to a fair trial—a right protected by the United States Constitution—so we apply the constitutional harmless error analysis.

9

As the party benefiting from the error, the State has the burden of demonstrating that the error was harmless. *State v. Race*, 293 Kan. 69, 81-82, 259 P.3d 707 (2011).

> "[T]he error may be declared harmless where the party benefitting from the error proves beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict. An appellate court will use the same analysis." *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011).

Bruce argues that testimony from three witnesses violated his right to a fair trial. The trial court denied Bruce's motion for a mistrial after discussing each of the identification issues with both parties present. Bruce claims that these decisions were prejudicial and impacted his right to a fair trial. Specifically, Bruce takes issue with the trial court's denial of his motion for mistrial over the testimony or in-court identification of three witnesses: Marra, Officer Velasquez, and Kelly.

First, Bruce argues Marra's in-court identification violated his right to a fair trial because the testimony was unreliable and subject to suppression. Inconsistent or failed identifications can undermine the reliability of a later, successful identification. *State v. Mitchell*, 294 Kan. 469, 475, 275 P.3d 905 (2012). At the same time, the accuracy of a witness' prior description of the suspect suggests that his identification is reliable. *State v. Corbett*, 281 Kan. 294, 305, 130 P.3d 1179 (2006). In this case, Marra twice failed to identify Bruce—once in a photo lineup and once at a preliminary hearing. However, while Marra struggled to identify his attacker in person, he consistently described him in the same way, allowing Officer Velasquez to identify Bruce from online photos.

The State also argues that Marra's in-court identification is reliable because it was made "spontaneously" and he "did not hesitate" in identifying him. However, this is a weaker argument, as Marra's spontaneous identification was certainly made easier by the

fact that Bruce was the only defendant at trial and was sitting at the defense table—a fact that the trial court recognized:

> "And based upon Marra's prior testimony, you know, and that's one of the things that the case law is pretty clear about is that, you know, if somebody can't identify them before, that it is way too suggestive to do it in Court when he's sitting there next to the defense attorney accused."

Here, the trial court determined that this conduct did not impact Bruce's right to a fair trial because the jury had the opportunity to listen to cross-examination, hear about the times Marra did not successfully identify Bruce, and evaluate the credibility of his testimony. The jury also heard evidence regarding Marra's consistent description of his attacker—one that matched the surveillance video evidence. The trial court determined that any prejudicial conduct with Marra's identification was mitigated through cross-examination and other evidence suggesting consistency and reliability.

As to Officer Velasquez, Bruce argues his in-court identification violated his right to a fair trial because it was made through knowledge the officer gained only during his investigation, not through any prior dealings with Bruce. The presence of prejudicial conduct does not automatically warrant a mistrial. In some cases, an admonition or jury instruction may cure prejudicial conduct. *Sherman*, 305 Kan. at 119. Here, the trial court cautioned the jury regarding Officer Velasquez' identification of Bruce and told the members of the jury to disregard his answer. The trial court determined that this admonition, coupled with the defense's cross-examination, corrected the error. Therefore, any prejudicial conduct was cured or mitigated, and Officer Velasquez' in-court identification of Bruce did not prejudice Bruce to the extent that it prevented a fair trial.

As to Kelly, Bruce argues his identification from a six-person photo lineup was tainted and therefore unreliable. "A lineup or photo array identification procedure is

11

impermissibly suggestive if the officers conducting the proceeding give the witness information that highlights one of the individuals before the selection is made or make suggestions about who the witness should select." *State v. Trammel*, 278 Kan. 265, 273, 92 P.3d 1101 (2004). Photo lineups that are impermissively suggestive are forbidden by the due process clauses of the United States Constitution. *State v. Clark*, 218 Kan. 726, Syl. ¶ 8, 544 P.2d 1372 (1976). However, even with the presence of unnecessarily suggestive identification procedures, suppression of the identification is not always mandatory. *State v. Cruz*, 297 Kan. 1048, 1064, 307 P.3d 199 (2013). The trial court must ask whether the identification is reliable even with the suggestive procedure. *Corbett*, 281 Kan. at 304. "If the identification bears some indicia of reliability and there is not a substantial likelihood of irreparable misidentification, the jury must decide whether the evidence is reliable enough to support the defendant's conviction." 281 Kan. at 305.

In this case, Officer Velasquez showed Kelly a single photograph of Bruce and asked if Bruce was the individual who was involved in the altercation at The Salt Mine that night. Later, Officer Velasquez showed Kelly a six-person photo lineup, and Kelly correctly identified Bruce. Bruce argues that this procedure was suggestive and tainted Kelly's later accurate identification. However, the trial court determined that because the photos were different and a significant amount of time passed between the two identifications, the State showed Bruce was not unduly prejudiced. It was therefore left to the jury to determine if Kelly's photo array identification was credible and reliable even though he was previously shown a single photo of Bruce. The trial court determined that any prejudicial conduct toward Bruce did not warrant a mistrial.

*Conclusion*

For each of the issues raised by Bruce, the trial court determined that the conduct did not impact his right to a fair trial. The trial court determined either that Bruce was not unduly prejudiced or that the prejudicial conduct was mitigated. A trial court abuses its

discretion when its decision (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *Moyer*, 306 Kan. at 352. The record does not indicate that denying Bruce's motion for a mistrial was an abuse of discretion.

The trial court correctly determined there was no prejudicial conduct that amounted to a fundamental failure of Bruce's substantial rights and a mistrial was not appropriate. Based on review of the entire record on appeal, we find the trial court's decision was not an abuse of discretion.

Affirmed.