NOT DESIGNATED FOR PUBLICATION

No. 126,351

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DAJORE CARTER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; ERIC WILLIAMS, judge. Submitted without oral argument. Opinion filed October 24, 2025. Affirmed.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before HILL, P.J., PICKERING and BOLTON FLEMING, JJ.

PER CURIAM:  At the conclusion of his jury trial, Dajore Carter was convicted of aggravated robbery. Carter raises two issues on appeal. First, Carter argues that there was insufficient evidence to support his conviction. Second, Carter maintains the district court erred by failing to give a jury instruction on eyewitness identification.

As to sufficiency, viewing the evidence in a light most favorable to the State, we find that a rational fact-finder could have found Carter guilty beyond a reasonable doubt of aggravated robbery.

1

As to Carter's second issue, Carter did not request an eyewitness identification jury instruction at trial; thus, our review is limited to determining whether the court's failure to give such an instruction was clearly erroneous. K.S.A. 22-3414(3).

Jury instructions must be both legally and factually appropriate. *State v. Hollins*, 320 Kan. 240, 242, 564 P.3d 778 (2025). For an eyewitness identification jury instruction to be legally appropriate: (1) the identification must have been critical evidence, and (2) there must have been serious questions about the reliability of the identification. *State v. Shields*, 315 Kan. 814, 820, 511 P.3d 931 (2022). Additionally, if a witness personally knows the individual being identified, the eyewitness identification jury instruction is not necessary. *State v. Novotny*, 297 Kan. 1174, 1182, 307 P.3d 1278 (2013).

Here, while it is clear the identification was critical evidence, there were no serious questions about the reliability of the identification of the defendant. And the witness, the victim of the crime, personally knew the defendant from prior interactions, making the instruction unnecessary. Thus, the district court did not err in failing to give an eyewitness identification instruction. As a result, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In the summer of 2020, Justin Maphet and two of his employees stopped at a Kwik Shop on their way home from work—still during daylights hours. One of Maphet's employees, Weston Edwards, went inside,hile Maphet and the other employee remained in Maphet's truck.

Inside the store, Edwards conversed with a man who identified himself as "Freddy." Edwards told Freddy that Maphet had an electronic tablet device for sale, and Freddy came to Maphet's truck and told Maphet he was interested in buying the tablet. Maphet and Freddy exchanged phone numbers to further discuss the transaction. Maphet

saved Freddy's number in his phone under the name "Freddy Kwick Shop Caddy" because the man he had spoken to was driving a gold Cadillac. This was the first in-person encounter between Maphet and Freddy.

The second encounter between the two men occurred just a day or two later when Freddy called Maphet and arranged to complete the purchase of the tablet. The two men met at the Kwik Shop and completed the transaction. This interaction also occurred during daylight hours.

The final in-person encounter between the two men is the subject of this case. After buying Maphet's tablet, Freddy expressed interest in a pair of sunglasses Maphet was selling. The parties exchanged phone calls and agreed to meet on the evening of September 7, 2020, to complete the sale. Maphet drove his truck to an agreed upon parking lot, and Freddy was already there in the same gold Cadillac. The Cadillac was backed into a parking spot, and Maphet pulled his truck into the spot next to it. According to Maphet, it was starting to get dark, but there were lights in the parking lot near the two vehicles.

Freddy exited the Cadillac from the passenger side and entered Maphet's truck, taking the passenger seat. Maphet showed Freddy the sunglasses, and Freddy pulled out money. But before the transaction was completed, the driver of the Cadillac asked Maphet if he had a lighter. As Maphet handed over the lighter, he felt something on the other side of his head. Maphet turned and saw that Freddie was now pointing a gun at his head. Freddie said, "You know what this is." The other man then struck Maphet with a gun, opened Maphet's truck door, and put his gun to Maphet's chest. The men repeatedly threatened to kill Maphet while stealing approximately $2,500 in cash and Maphet's cell phone. The men then got back into the Cadillac and sped away.

Because he was without his cell phone, Maphet drove home and used his wife's phone to call 911. Wichita Police Officer Danny Taylor responded and went to Maphet's house. Maphet explained to Officer Taylor what had happened during the interaction with Freddy. Maphet also provided tracking information for his cell phone, which law enforcement was able to use to recover Maphet's phone. Maphet was able to show law enforcement incoming and outgoing calls with the number he had listed as Freddy that had been made shortly before the robbery occurred. The police referenced a database and determined the number Maphet had been having contact with was registered to Dajore Carter.

Maphet also provided Officer Taylor with a description of the two men involved in the robbery. Based on this information, a photo array was compiled. Later that same evening, Maphet was presented this array, and he identified the man he knew as Freddy "without a doubt." He wrote on the photo, "This is Freddy. I am 100 percent positive this is the person that I had met and initiated the meeting in which he and his partner robbed me at gunpoint and threatened to take my life." Later, Maphet was presented a second lineup. This lineup included Demartae Jackson—the other man police believed was involved in the robbery based upon fingerprints found on the driver's door of Maphet's truck. After viewing the second lineup, Maphet chose one of the photos and stated, "Based off this photo, I believe it to be the other person involved in robbing me and threatening to kill me on the night of the robbery." When asked how certain he was about identifying the other assailant, Maphet wrote, "I would say at least ninety percent."

Carter was arrested and charged with aggravated robbery. In January 2023, the district court held a two-day jury trial at which Maphet, Officer Taylor and four others from the Wichita Police Department testified for the State. Carter called no witnesses.

Carter was present at trial and Maphet again identified him, stating, "Without a doubt" this was the person who had robbed him. Carter did not testify or call any

4

witnesses, but in opening statements and closing arguments, his attorney raised a case of mistaken identity and pointed to the lack of forensic evidence tying him to the crime. It took the jury just over 90 minutes to convict Carter as charged. At sentencing, Carter was sentenced to 66 months' imprisonment. Carter timely appeals.

ANALYSIS

DID SUFFICIENT EVIDENCE EXIST TO CONVICT CARTER OF AGGRAVATED ROBBERY?

*Preservation*

A criminal defendant does not need to challenge the sufficiency of the evidence at trial to preserve the issue on appeal. *State v. Farmer*, 285 Kan. 541, 545, 175 P.3d 221 (2008). In this case, Carter did challenge the sufficiency of the evidence at the trial. He offered a motion for a directed verdict of acquittal twice, first after the State rested its case and again after all testimony was given. The district court denied both motions.

*Standard of Review*

When a defendant challenges the sufficiency of the evidence in a criminal case, an appellate court reviews "the evidence in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. An appellate court does not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses." *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021). "This is a high burden, and only when the testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt should we reverse a guilty verdict." *State v. Meggerson*, 312 Kan. 238, 247, 474 P.3d 761 (2020).

*Discussion*

Carter was convicted of aggravated robbery. The relevant statute states, "Robbery is knowingly taking property from the person or presence of another by force or by threat of bodily harm to any person," and becomes aggravated when it is committed by a person who is "armed with a dangerous weapon" or "inflicts bodily harm upon any person in the course of such robbery." K.S.A. 21-5420(a), (b)(1),(2).

Carter contends there is insufficient evidence to uphold his conviction, asserting the State failed to prove he was the assailant. Carter asserts that Maphet's identification was not reliable. He also focuses on the lack of physical evidence tying him to the crime.

Carter's arguments are not persuasive. There is sufficient evidence for a reasonable fact-finder to conclude Carter was guilty.

Maphet testified with great certainty that he personally knew Carter. Maphet had participated in two, face-to-face, prior encounters with Carter that had occurred less than one month before the crime, and during daylight hours.

Maphet also testified about the events before and during the commission of the robbery. He testified that while the interaction leading up to the robbery occurred as it was getting dark, there was sufficient light in the parking lot to see Carter. Maphet testified that Carter entered Maphet's vehicle, where Maphet saw him face-to-face and spoke to him. Maphet also testified definitively that Carter was in his truck and pulled a gun on him. He further testified that $2,500 in cash and his cell phone were taken from him. His testimony did not waver. While Maphet admitted to being disoriented after the incident, he was able to proceed home, call 911, describe what happened to Officer Taylor, track his phone, and identify Carter with certainty from a lineup on the evening of the crime. Maphet's testimony was consistent throughout the proceedings.

6

Officer Taylor's testimony also provided additional evidence. The jury would have considered evidence that the phone number Maphet had been using to reach the person he knew as "Freddy" was actually registered to Carter. While this is circumstantial evidence, circumstantial evidence can support a conviction. Circumstantial evidence need not exclude every other reasonable conclusion to be sufficient. *State v. Logsdon*, 304 Kan. 3, 25, 371 P.3d 836 (2016).

A reasonable person could find that Carter knowingly took property from Maphet by force or threat while armed with a dangerous weapon. We find that viewed in a light most favorable to the State, sufficient evidence existed to support Carter's conviction for aggravated robbery.

DID THE DISTRICT COURT ERR BY NOT ISSUING AN EYEWITNESS INSTRUCTION TO THE JURY?

*Preservation and Standard of Review*

Carter did not ask the district court to instruct the jury on eyewitness identification. On appeal, he argues that the district court should have given that instruction. "[A] party may raise a jury-instruction challenge for the first time on appeal." *State v. Shields*, 315 Kan. at 820. But, if "a party fail[ed] to object to or request a jury instruction at trial, K.S.A. 22-3414(3) limits appellate review to a determination of whether the instruction was clearly erroneous." *State v McLinn*, 307 Kan. 307, 318, 409 P.3d 1 (2018) (quoting *State v. Knox*, 301 Kan. 671, 680, 347 P.3d 656 (2015).

*Discussion*

The instruction Carter believes the district court should have given states:

"The law places the burden upon the State to identify the defendant. The law does not require the defendant to prove (he) (she) has been wrongly identified. In weighing the reliability of eyewitness identification testimony, you should determine whether any of the following factors existed and, if so, the extent to which they would affect accuracy of identification by an eyewitness. Factors you may consider are:

"1. The opportunity the witness had to observe. This includes any physical condition which could affect the ability of the witness to observe, the length of the time of observation, and any limitations on observation like an obstruction or poor lighting;

"2. The emotional state of the witness at the time including that which might be caused by the use of a weapon or a threat of violence;

"3. Whether the witness had observed the defendant(s) on earlier occasions;

"4. Whether a significant amount of time elapsed between the crime charged and any later identification;

"5. Whether the witness ever failed to identify the defendant(s) or made any inconsistent identification;

"6. Whether there are any other circumstances that may have affected the accuracy of the eyewitness identification." PIK Crim. 4th 51.110.

We first review a jury instruction challenge to see whether the jury instruction at issue was both legally and factually appropriate. See *Shields*, 315 Kan. at 820. To do so, "appellate courts consider whether the instruction was legally and factually appropriate, using an unlimited standard of review of the entire record." *Hollins*, 320 Kan. at 242.

If the instruction was both legally and factually appropriate, and the district court erred in not giving the instruction, we then consider whether the error warrants reversal. In cases where the jury instruction was not requested at trial, a clear error analysis

8

applies, which requires the party requesting the instruction to firmly convince the reviewing court that the jury would have reached a different verdict had the district court given the instruction. *McLinn*, 307 Kan. at 318; *see also* K.S.A. 22-3414(3).

In deciding whether an instruction on eyewitness identification was legally appropriate in this case, we must consider: (1) whether the identification was critical to the State's case, and (2) whether there were serious questions about the reliability of the identification. *Shields*, 315 Kan. at 820.

Here, Maphet's identification of Carter was critical evidence for the State. Maphet provided Carter's physical description to Officer Taylor shortly after the crime, picked him from a photo lineup that same night, and later identified Carter at trial in front of the jury. The State heavily relied upon this evidence to obtain a conviction. Thus, the first prong of the test is satisfied.

The second prong is more difficult. For the eyewitness identification instruction to be legally appropriate, there must have been serious questions about the reliability of the eyewitness identification. 315 Kan. at 820. Our Supreme Court has held that it is best "to leave the reliability determination to the jury and allow the parties to challenge the eyewitness identification testimony at trial as the circumstances warrant." *State v. Mitchell*, 294 Kan. 469, 479, 275 P.3d 905 (2012). The instruction should not be given unless there is evidence which causes the trial court to question the reliability of the eyewitness's identification. *State v. Harris*, 266 Kan. 270, 278, 970 P.2d 519 (1998).

Courts consider five factors in deciding whether there is a serious question about the reliability of an eyewitness' identification:

"(1) the opportunity of the witness to view the defendant at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior descriptions of the

criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the time between the crime and the confrontation." *Shields*, 315 Kan. 814, Syl. ¶ 3.

Carter argued the identification was not reliable because the "encounter occurred at night, in the dark, inside a truck," Maphet's attention was divided between the two men committing the robbery, and "Maphet had only observed the man he knew as Freddy on two short prior occasions" during daylight. He also argued Maphet was disoriented to the point of not knowing where his keys were located.

But Carter's argument ignores the evidence. Applying the factors from *Shields*, first, Maphet had the opportunity to view the defendant at the time of the crime. Maphet testified that while it was getting dark, the parking lot was well-lit, and he was "100 percent" certain of the identity of Carter.

Second, as to Maphet's degree of attention, while he admitted to being fearful and somewhat disoriented during the encounter, he was able to drive home and give necessary information to law enforcement—including assisting law enforcement with tracking his stolen cell phone. There is no evidence that Maphet's attention was impaired to the extent his identification might have been unreliable.

Third, as to the accuracy of the witness' prior descriptions of Carter, Maphet had two prior face-to face interactions with Carter within a few weeks of the robbery. Maphet testified he had saved Carter's phone number as "Freddy Kwick Shop Caddy," because Freddy had been in a gold Cadillac the first time they met. He further testified that a gold Cadillac was the vehicle Carter used during the commission of this crime. Maphet was familiar with both Carter and his vehicle.

Fourth, as to certainty, Maphet described his attackers to Officer Taylor and then picked Carter out of a photo array with "100%" certainty. Maphet also identified Carter at trial with the same certainty.

Finally, as to the time between the crime and the confrontation, Maphet picked Carter out of a photo array shortly after the crime was committed.

The factors identified in *Shields* as applied to the facts of this case do not demonstrate any serious question as to Maphet's eyewitness identification of Carter. *Shields*, 315 Kan. 814, Syl. ¶ 3.

Moreover, our Supreme Court has held that the factors set out in a cautionary eyewitness identification instruction "contemplate an eyewitness who does not know the defendant personally. Where the witness personally knows the individual being identified, the cautionary eyewitness identification instruction is not necessary. The accuracy of the identification can be sufficiently challenged through cross-examination." *State v. Novotny*, 297 Kan. at 1182 (citing *State v. Calvin*, 279 Kan. 193, Syl. ¶ 9, 105 P.3d 710 [2005]). Here, Maphet knew the defendant personally as he had met him on two prior occasions and sold him a tablet.

Because at trial there were no serious questions about the reliability of Maphet's identification of Carter, and Maphet personally knew Carter, it would not have been legally appropriate to provide the jury with an eyewitness identification instruction. The district court did not err.

Affirmed.