NOT DESIGNATED FOR PUBLICATION

No. 119,422

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JHYLE A. HAMLIN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; CHRISTOPHER M. MAGANA, judge. Opinion filed October 18, 2019. Affirmed.

*Christina M. Kerls*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., GREEN and BUSER, JJ.

PER CURIAM: Jhyle A. Hamlin appeals his conviction for aggravated robbery. Hamlin contends his conviction should be reversed because the State's prosecutor committed four errors which violated his constitutional right to a fair trial. He also claims a sentencing error. Upon our review, we find no reversible error and, therefore, affirm the conviction and sentence.

1

On July 17, 2017, a white male armed with a gun entered the Express Mart in Wichita and demanded that the cashier hand over money from the register. The cashier, Shiva Karki, complied and the robber left the store with $110. As part of its investigation, the Wichita Police Department released surveillance footage of the robber to social media asking for the public's help in identifying him. Two employees from the Pathways Family Services (Pathways) residential facility recognized the robber as Hamlin, a resident of the facility, and reported their identification to the police. Two bank employees also recognized Hamlin as a customer and informed the police of their identification. Shortly thereafter, the State charged Hamlin with aggravated robbery in violation of K.S.A. 2017 Supp. 21-5420(b)(1).

Following a trial, the jury convicted Hamlin of aggravated robbery and he was sentenced to 102 months in prison. He filed a motion for new trial and a motion for acquittal. In the motions, Hamlin argued that he was denied a fair trial because:  (1) a witness violated a motion in limine order; (2) the opinion testimony of lay witnesses who identified Hamlin from surveillance footage should have been excluded; (3) the prosecutor made improper comments during closing arguments; and (4) there was insufficient evidence to convict Hamlin beyond a reasonable doubt. The district court denied the motions.

Hamlin appeals, asserting his constitutional right to a fair trial was violated by the prosecutor's errors and improper sentencing by the district court.

CLAIMS OF PROSECUTORIAL ERROR

On appeal, Hamlin claims the State violated his right to a fair trial by committing four prosecutorial errors:

- The prosecutor elicited testimony from Karki about his degree of certainty in his in-court identification of Hamlin as the robber.
- The prosecutor improperly mentioned Karki's degree of certainty in his identification during closing arguments.
- The prosecutor failed to inform testifying witness, Josh Huckriede, that he was prohibited from referring to probation, the court system, Department of Corrections, or any suggestion of criminal activity when describing the Pathways residential facility.
- The prosecutor improperly advised the jury in closing arguments that it did not need to be misled or confused by defense counsel's statements regarding the differences in appearance between Hamlin and the robber.

Each error will be separately addressed.

At the outset it is necessary to briefly summarize our standard of review that applies to the analysis of each claim of prosecutorial error. Our standard of review provides that an appellate court uses a two-step process to evaluate claims of prosecutorial error:

> "These two steps can and should be simply described as error and prejudice. To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice, we simply adopt the traditional constitutional harmlessness inquiry demanded by *Chapman* [*v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)]." *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016).

*Prosecutor's Question Regarding Degree of Certainty of Identification*

On appeal, Hamlin asserts the State was prohibited from asking Karki if he was "100 percent sure" of his in-court identification of Hamlin as the robber. Hamlin claims this question violated *State v. Mitchell*, 294 Kan. 469, 275 P.3d 905 (2012), because it is error to ask a witness the degree of certainty in his or her identification. Importantly, at trial, Hamlin did not object to the prosecutor's question based on *Mitchell*. Instead, Hamlin objected to the question claiming it was self-serving and speculative.

The State responds that Hamlin failed to preserve this issue for appeal because he failed to make a timely and specific objection based on *Mitchell* during trial in keeping with K.S.A. 60-404. That statute states:

> "A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection." K.S.A. 60-404.

K.S.A. 60-404 provides that a contemporaneous objection must be made to all evidentiary claims—including questions posed by a prosecutor and responses to those questions—to preserve the issue of prosecutorial error for appellate review. *State v. Raskie*, 293 Kan. 906, 914, 269 P.3d 1268 (2012). Relevant to this appeal, Kansas courts have emphasized that a party may not object at trial to the admission of evidence on one ground and then on appeal argue a different ground. *State v. McCormick*, 305 Kan. 43, 47, 378 P.3d 543 (2016) (by only objecting based on relevance at trial, defendant waived claim the evidence was unduly prejudicial).

Our court recently addressed this issue in a similar situation. In *State v. Johnson*, No. 117,828, 2018 WL 5305658 (Kan. App. 2018) (unpublished opinion), the State elicited testimony regarding the witness' degree of certainty in his identification of the

4

perpetrator on both direct and redirect examination. On redirect examination, the defense only objected to introduction of the evidence on the basis that it was outside the scope of cross-examination rather than renew its initial objection to the improper admission of degree of certainty testimony. The State argued that the defendant's failure to object barred appellate review of the issue under K.S.A. 60-404.

Our court held that defense counsel failed to preserve the evidentiary issue for appeal, stating: "In light of the vagueness of the statement and the district court's response to the redirect objection, it was clearly insufficient to inform the district court of the legal basis for the objection and provide the court with an opportunity to fully consider its merits." 2018 WL 5305658, at *4.

Similar to *Johnson*, at trial Hamlin only objected on the basis that the testimony was self-serving and speculative, not because degree of certainty testimony was improper. As a consequence, we hold this issue is not preserved for appellate review. Moreover, we are not persuaded by Hamlin's argument on appeal that this issue "should be reviewed as it contributes to the overall deprivation of [Hamlin's] due process right to a fair trial." As discussed below, the merits of Hamlin's argument do not establish a violation of Hamlin's right to a fair trial.

For the sake of completeness, despite the procedural bar, we will analyze the merits of the issue.

On appeal, Hamlin argues the State erred in eliciting the store cashier's testimony regarding the degree of certainty of his identification of Hamlin as the robber. Hamlin argues that this kind of testimony has previously been rejected in *Mitchell*. Hamlin misconstues the *Mitchell* holding.

In *Mitchell*, the defendant complained that the district court erred in providing a cautionary eyewitness identification jury instruction because, in part, the instruction informed the jury that it should consider the witness' degree of certainty as a factor in evaluating its identification testimony. The *Mitchell* court specifically focused its discussion on whether it was appropriate for a district court to include this factor in the standard eyewitness identification jury instruction. See PIK Crim. 3d 52.20; cf. PIK Crim. 4th 51.110.

Our Supreme Court held that this particular factor prompts the jury to impermissibly conclude that eyewitness identification evidence is more reliable when the witness expresses greater certainty. 294 Kan. at 481. While our Supreme Court discouraged the use of this factor in the standard eyewitness identification jury instruction, the *Mitchell* court did not explicitly reject the use of such testimony as evidence. Instead, the specific facts of each case determine whether the concerns regarding eyewitness reliability were implicated and whether procedural safeguards were in place. See 294 Kan. at 481-83.

Our court has previously considered this issue and declined to adopt Hamlin's understanding of *Mitchell*. In *Johnson*, the defendant claimed the district court erred in admitting degree of certainty evidence as violative of *Mitchell*'s precedent. Our court disagreed, noting that *Mitchell* was limited to excluding degree of certainty as a factor in the standard eyewitness jury instruction, not as a matter of excluding it as admissible evidence. In holding that the evidence was properly admitted we observed: "[T]he *Mitchell* court went out of its way to emphasize its continued belief that 'the best approach is to leave the reliability determination to the jury and allow the parties to challenge the eyewitness identification testimony at trial as the circumstances warrant.'" *Johnson*, 2018 WL 5305658, at *6.

6

In the case on appeal, similar to *Johnson*, the district court provided the jury with the standard cautionary eyewitness instruction which did not include the prohibited language at issue in *Mitchell*. See PIK Crim. 4th 51.110. As a result, the jury was not admonished to consider Karki's degree of certainty as a factor to be weighed when evaluating his credibility. Rather, the jury was provided with six other factors to consider in evaluating Karki's eyewitness identification. Even assuming error, the prosecutor's question regarding Karki's degree of certainty evidence was harmless because the jury was properly instructed on the relevant factors of eyewitness identification—which did *not* include evidence of the degree of certainty regarding Karki's identification of Hamlin as the robber.

Moreover, other than Karki's in-court identification, there was substantial identification evidence that Hamlin was the robber. Surveillance footage showed the perpetrator was wearing a black T-shirt with a cartoon character and words written in red lettering on the front. The surveillance footage from Pathways shows Hamlin wearing a Stewie Griffin T-shirt with "You Suck" written across the top in red lettering just before Hamlin signed out of Pathways for the day—about an hour before the robbery. A Pathways employee, Maria King, had witnessed Hamlin wearing this shirt on previous occasions. King also viewed the surveillance video at trial and stated, "It's the black T-shirt with Stewie—character from a TV show that above it says, 'You Suck' in red." Huckriede also recognized the perpetrator's Family Guy T-shirt as similar to the one that Hamlin owned. When authorities searched Hamlin's apartment, they found a T-shirt that was identical to the one photographed in the surveillance footage.

Additionally, four individuals familiar with Hamlin immediately reported Hamlin as the robber upon seeing his photograph from the surveillance footage. King identified Hamlin because of the clothing, aviator sunglasses, and haircut. King noted the height, skin tone, and build also looked familiar to her. Huckriede testified he immediately recognized Hamlin in the surveillance footage because of the aviator sunglasses, the

7

Family Guy T-shirt Hamlin often wore, and his haircut. Two other individuals—tellers at the same bank that Hamlin patronized—also recognized him from the surveillance footage released to social media. The first teller testified she recognized Hamlin's black clothing, "greasy longish hair," and sunglasses. She showed the picture to another teller who immediately recognized Hamlin. She testified that she recognized Hamlin because of the "dark-on-dark clothing and the sunglasses were very familiar to me, and then the haircut."

In summary, we find no prosecutorial error in eliciting degree of certainty testimony from Karki regarding his identification of Hamlin as the robber. Even assuming there was error, however, it was harmless due to the numerous other identifications made by other witnesses.

*Prosecutor's Argument Regarding Degree of Certainty of Identification*

During closing arguments, the prosecutor made the following comments:

> "Major issue in this case is identity. How do we know it was the defendant who committed this crime? Well, we have the testimony of [the victim], the clerk of the Express Mart, and he identified the defendant several times in court, stating that he was 100 percent sure that was the person who robbed him."

On rebuttal, the prosecutor also stated that the store cashier "emphatically pointed to the defendant, I mean, there is little question, right, that he knows who robbed him."

At trial, Hamlin did not make a contemporaneous objection to these statements. However, a claim of prosecutorial error based on such comments made during closing arguments may be reviewed on appeal even without a contemporaneous objection. *State v. Anderson*, 294 Kan. 450, 461, 276 P.3d 200 (2012). See *State v. McBride*, 307 Kan. 60, 64-65, 405 P.3d 1196 (2017).

8

On appeal, Hamlin contends the prosecutor erred in referring to Karki's degree of certainty of identification because this testimony was improperly solicited. As discussed earlier, however, this question was not prosecutorial error and the resultant testimony was admissible evidence. Prosecutors are permitted to comment on evidence admitted at trial. *State v. Hall*, 292 Kan. 841, 848, 257 P.3d 272 (2011). We find no error.

*Whether the Prosecutor Violated the Order in Limine*

Prior to trial, the State filed a motion in limine requesting an order that would allow testimony that Hamlin resided at Pathways, a residential facility, but preclude any facts relating to his prior offenses, the reasons for his placement at that facility, or that Pathways served as a transitional facility for individuals with prior criminal histories. At the hearing on the motion, both parties agreed that evidence relating to Hamlin's underlying juvenile convictions was inadmissible at trial.

In granting the motion in limine, the district judge stated, "We'll just say [Hamlin is] residing in Pathways, which is a juvenile halfway house, and then from that point forward, you can talk about all the procedures, the fact that he is, I suppose, required to be there, he's required to come home, and there are requirements."

At trial, neither party sought to admit evidence related to Hamlin's underlying offense. However, during trial, the State asked Huckriede about his role as a case manager at Pathways to which he responded:

> "As case manager, it's my job to help with the program plans for each of the youth. A lot of those program plan goals come from their probation officers or the courts determining the things that they're required to do while they're there, required to learn, so my job is to help them get those contacts within the community or make sure that they're working towards those goals, ideally, and follow through, and then communicate back with the probation officer or courts."

9

Hamlin's defense counsel objected, claiming the testimony violated the order in limine. In response, the district court informed Huckriede not to make further mention of terms related to probation, corrections, or courts, to which he responded, "Yeah, I didn't know that was the case, otherwise—yeah." The district judge replied, "Oh, I understand. I didn't think it was intentional. Sometimes these directions are a little hazy, I understand."

At the conclusion of the presentation of evidence, and at the request of defense counsel, the district court provided the jury with instruction No. 8: "Evidence was introduced in this case showing that the Defendant was living in a juvenile halfway house. The fact that a person resides in a halfway house is not evidence of guilt for any criminal offence and cannot be used against the Defendant in this case."

After Hamlin's conviction, he filed a motion for new trial which, in relevant part, complained about the State's violation of the order in limine. At the hearing on the motion, defense counsel argued, that Huckreide

> "clearly violated the Court's order about what he could testify to and not testify to about the halfway house. And it doesn't matter whose fault that is. . . .
>
> . . . .
>
> ". . . I suppose the prosecution can say, well, we didn't explain it to him, or he can say, well, I didn't understand, I was just asking a question, but none of that really matters. It isn't a fault issue."

The district court denied the motion, finding that defense counsel agreed to admit testimony regarding how Pathways was operated and that defense counsel asked for a limiting instruction regarding that testimony which was provided to the jury. Further, the district court found that if there was error, it was harmless because the witness' testimony about corrections and probation did not directly correlate to Hamlin's court-ordered placement at Pathways and the special instruction given to the jury addressed the challenged testimony. In this regard, we note that "[a] district court normally cures the

prejudice from an improper admission of evidence by admonishing the jury to disregard testimony elicited in violation of an order in limine." *State v. Uhls*, No. 102,771, 2011 WL 135021, at *4 (Kan. App. 2011) (unpublished opinion).

On appeal, Hamlin's argument is *not* that Huckreide violated the order in limine by referencing terminology that suggested Hamlin was residing at Pathways due to a violation of law. Hamlin's sole contention is that the prosecutor erred *in failing to inform Huckriede of the order*. As noted earlier, this is not the argument that Hamlin raised at trial or posttrial, when he asserted there was no fault involved in bringing about the offending testimony but, nonetheless, the testimony violated the order in limine and prejudiced Hamlin.

As discussed earlier, Kansas courts have emphasized that a party may not object at trial to the admission of evidence on one ground and then on appeal argue a different ground. *McCormick*, 305 Kan. at 47. We discern that Hamlin has impermissibly shifted his reason for objecting to the trial error from an evidentiary basis to one grounded in prosecutorial error. As a result, this issue was not preserved.

Moreover, there is another basis to affirm Hamlin's conviction on this issue. A party claiming an error occurred has the burden of designating a record that affirmatively shows prejudicial error. Without such a record, an appellate court presumes the action of the trial court was proper. See *State v. Sisson*, 302 Kan. 123, 128, 351 P.3d 1235 (2015).

On appeal, Hamlin argues that based on Huckreide's comment to the district judge: "Yeah, I didn't know that was the case," that "[i]t is clear from the record that the State did not inform Mr. Huckreide that he was not to discuss why residents, [who] included [Hamlin], were placed at Pathways." We find this is an insufficient factual basis to predicate legal error given the ambiguous nature of Huckreide's cursory and ambiguous comment.

11

Moreover, subsequent to Hamlin filing his appellate brief and making this particular claim of error, the State filed an affidavit from the trial prosecutor and added it to the record on appeal. In part, the affidavit avers: "During pre-trial witness preparation, I informed Mr. Huckriede . . . that he could not discuss the reasons Mr. Hamlin was a resident at Pathways, or the . . . fact that Pathways served as a transitional facility for individuals with prior criminal histories. I reminded Mr. Huckriede of these limitations the day of trial." Hamlin did not object to this addition to the record on appeal or file a reply brief contesting the appropriateness of our court considering this affidavit in analyzing this issue.

Our Supreme Court has made clear that, generally, the defendant has a burden at trial to establish the facts that the prosecutor did not fulfill his or her duty. In this particular instance, "'[o]utside the presence of the jury, the defendant's attorney should inquire if the prosecutor warned or failed to warn the witness to refrain from making such a statement. The prosecutor must then articulate the reason for the violation.'" *State v. Armstrong*, 299 Kan. 405, 431, 324 P.3d 1052 (2014) (quoting *State v. Crume*, 271 Kan. 87, 102, 22 P.3d 1057 [2001]). In *Armstrong*, the district court held that "[b]ecause defense counsel made an assumption rather than make the necessary inquiry, this court has no basis on which to make the evaluation of whether there was prosecutorial [error]." 299 Kan. at 431. See *State v. Dillard*, No. 111,123, 2015 WL 2414317, at *2-3 (Kan. App. 2015) (unpublished opinion).

Similarly, in the case on appeal, Hamlin has failed to establish the requisite factual basis to show that prosecutorial error occurred in this circumstance.

*Prosecutor's Argument Regarding Evaluation of Trial Evidence*

Hamlin argues the prosecutor misstated the law during the rebuttal closing arguments by instructing the jury that it did not need to look at all of the evidence. Hamlin specifically complains of the italicized language in the following passage:

"All [witnesses] told you the same thing, black clothes, Stewie Griffin shirt, aviator glasses, greasy hair, bangs, whatever, Caucasian, medium build, that's the defendant. I mean, that's common sense. You don't need to look any farther. *You don't need to be confused about square glasses, round glasses, whatever.* They were aviator glasses, same glasses that were found, oh, where? In his apartment, along with the Stewie Griffin shirt.

"I mean, it is what it is, folks. I think common sense will get you there. *Don't over-think it. Don't be misled.* Don't expect the State to have proven every single fact of the case, motive, how we jog from one place to another, whether he took the bus, a plane, a car, a helicopter, those things the State doesn't have to prove." (Emphases added.)

Hamlin's defense counsel did not object to the prosecutor's comments at trial, but he raises the claims of error for the first time on appeal.

In response, the State argues that, given the context of the comments, the prosecutor did not encourage the jury to disregard evidence. Rather, the prosecutor was responding to defense counsel's assertion that the sunglasses worn by the robber were not the same style as the sunglasses found in Hamlin's apartment. The State contends the prosecutor was within his latitude to comment on the similarities in the evidence presented and to urge the jury not to focus its attention on just one piece of evidence.

Generally, a prosecutor's closing argument "must accurately reflect the evidence, accurately state the law, and cannot be 'intended to inflame the passions or prejudices of the jury or to divert the jury from its duty to decide the case based on the evidence and the controlling law.'" *Raskie*, 293 Kan. at 917. A prosecutor's conduct "'cross[es] the line

13

by misstating the law.' And a 'defendant is denied a fair trial when a prosecutor misstates the law and the facts are such that the jury could have been confused or misled by the statement.' [Citations omitted.]" *State v. Carter*, 305 Kan. 139, 151, 380 P.3d 189 (2016). "Moreover, this court 'may consider whether the prosecutor's remark is . . . made in response to defense counsel's remarks.'" *State v. Peppers*, 294 Kan. 377, 397, 276 P.3d 148 (2012) (quoting *State v. Miller*, 293 Kan. 535, 551, 264 P.3d 461 [2011]). The prosecutor's comments must also be "evaluated in context and can be mitigated by jury instructions regarding the burden of proof." *Peppers*, 294 Kan. at 397.

Because prosecutors are afforded a wide latitude in presenting closing arguments, "it is not error for the prosecutor to mention common sense in the closing argument or to tell the jury that it can use common sense in reaching its decision." *State v. Mitchell*, 269 Kan. 349, 360, 7 P.3d 1135 (2000). Here, the prosecutor's comments, taken in context, show that the prosecutor was urging the jury to use its common sense in evaluating all the evidence presented at trial. Testimonial evidence regarding the shape and style of the sunglasses and the surveillance footage of the robber wearing sunglasses was presented to the jury, in addition to the actual sunglasses found in Hamlin's apartment.

Of note, during defense counsel's closing argument, he argued the jury should pay attention to any differences between the robber and Hamlin, including the differences in sunglasses. In response, the State pointed to the numerous similarities between the robber and Hamlin, including the fact that testimony from multiple witnesses showed the sunglasses Hamlin wore were aviator sunglasses and a similar style of sunglasses were found in his apartment during the execution of a search warrant. Given all the trial evidence, the prosecutor asked the jury to use its common sense in identifying Hamlin as the robber. The prosecutor was permitted to comment on admitted evidence and his statement did not misstate the law or any facts in evidence.

Additionally, the prosecutor did not err in informing the jury that the State did not have to prove every single fact of the case, such as the style of particular sunglasses worn by the robber as observed by Karki, or later found in Hamlin's apartment. The State is only required to prove every element of the offense beyond a reasonable doubt. *State v. Parker*, No. 105,071, 2013 WL 2991064, at *3 (Kan. App. 2013) (unpublished opinion). Here, the prosecutor was asking that the jury to differentiate between what, in his estimation, were immaterial facts and facts essential to prove the elements of the crime.

In summary, we hold the prosecutor did not err in making the comments he made in closing arguments.

CLAIM OF SENTENCING ERROR

Hamlin also appeals his sentence on the basis that the district court used his prior juvenile adjudications to determine his criminal history without presenting them to a jury. Hamlin acknowledges that this issue has previously been decided against him, but he raises the issue to preserve it for federal review.

Just as Hamlin acknowledges, past appellate courts have allowed district courts to use a prior conviction, including juvenile adjudications, to increase a defendant's sentence under *Apprendi v. New Jersey,* 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). See *State v. Hitt*, 273 Kan. 224, 225, 42 P.3d 732 (2002). We find no error.

Affirmed.

15